Argued and submitted January 10, decision of the Court of Appeals and judgment of the circuit court reversed; case remanded to the circuit court for further proceedings May 9, 1996

STEELMAN-DUFF, INC.,
a corporation,
*Respondent on Review,*

*v.*

STATE OF OREGON,
acting by and through its
DEPARTMENT OF TRANSPORTATION/
OREGON STATE HIGHWAY DIVISION,
*Defendant,*

*and*

J.C. COMPTON CONTRACTOR, INC.,
an Oregon corporation,
*Petitioner on Review.*

(CC 92C12356; CA A80684; SC S42501)

915 P2d 958

Paul R. Meyer, of Meyer & Meyer, P.C., Portland, argued the cause and filed the petition for petitioner on review.

Thomas A. Larkin, of Stewart Sokol & Gray, Portland, argued the cause for respondent on review. With him on the brief was John Spencer Stewart.

Keith M. Garza, Guy A. Randles, and Eric A. Grasberger, of Stoel Rives, Portland, filed a brief on behalf of *amicus curiae* Oregon-Columbia Chapter of the Associated General Contractors of America, Inc.

GRABER, J.

Durham, J., filed a concurring opinion in which Fadeley and Unis JJ., joined.

## GRABER, J.

This case involves interpretation of the attorney fees provision in ORS 279.067(4). The Court of Appeals held that, under ORS 279.067(4), J.C. Compton Contractor, Inc. (Compton), was not entitled to attorney fees in this action. *Steelman-Duff, Inc. v. Dept. of Transportation*, 135 Or App 545, 549, 899 P2d 752 (1995). For the reasons that follow, we reverse.

ORS 279.067 provides:

"(1)   Any bidder adversely affected or any trade association of construction contractors acting on behalf of a member of the association to protect interests common to construction contractor members may commence a suit in the circuit court for the county in which are located the principal offices of the public contracting agency, for the purpose of requiring compliance with, or prevention of violations of, ORS 279.011 to 279.063, or to determine the applicability of ORS 279.011 to 279.063 to matters or decisions of the agency.

"(2)   The court may order such equitable relief as it considers appropriate in the circumstances. In addition to or in lieu of any equitable relief, the court may award an aggrieved bidder any damages suffered by the bidder as a result of violations of ORS 279.011 to 279.063 for the reasonable cost of preparing and submitting a bid. A decision of the public contracting agency shall not be voided if other equitable relief is available.

"(3)   If the public agency is successful in defending its actions against claims of violation or potential violation of ORS 279.011 to 279.063, then the court may award to the aggrieved public agency any damages suffered as a result of the suit.

"(4)   *The court may order payment of reasonable attorney fees* and costs on trial and appeal *to a successful party in a suit brought under this section.*" (Emphasis added.)

ORS 279.011 to 279.063, referred to in the foregoing statute, relate to requirements for bids and bidders in the public contracting process.

Steelman-Duff was an adversely affected bidder that brought this action under ORS 279.067(1). Steelman-Duff claimed that the Oregon Department of Transportation (ODOT) had failed to follow certain requirements of the public contracting law and had improperly rejected its bid on a public construction project as being nonresponsive. Assuming that its bid was responsive, Steelman-Duff was the lowest bidder on that project. Because Compton was the next lowest bidder, and ODOT had announced its intention to award the contract to Compton, Steelman-Duff named J.C. Compton Company, as well as ODOT, as a defendant.[1] The relief sought was

> "a determination that [Steelman-Duff] is the lowest responsible responsive bidder and is entitled to award of the subject procurement, with appropriate injunctive relief so requiring, together with determination in favor of [Steelman-Duff] and against [ODOT] for recovery of [Steelman-Duff's] attorney's fees and costs incurred herein."

Compton then filed an answer, affirmative defenses, counterclaims, and cross-claims. In the first counterclaim and cross-claim, Compton alleged that it was the lowest responsible, responsive bidder and that ODOT remained obligated to follow through on its announced intention to award the contract to Compton. The relief that Compton sought was that "[t]he court should honor the decision of [ODOT] to award the contract for the Project to Compton and should direct [ODOT] to award the contract to Compton." Compton also sought attorney fees and costs from Steelman-Duff pursuant to ORS 279.067(4).

In its second counterclaim, Compton sought damages from Steelman-Duff for delay caused by the filing of the

---

[1] It was later discovered that J.C. Compton Company and Compton were not the same entity, although they were related companies. J.C. Compton Company, not Compton, had been named as a defendant, although Compton was the entity that had submitted the second-lowest bid on the subject project. Steelman-Duff dismissed J.C. Compton Company from the action under ORCP 54 A(1), which provides in part:

> "[A]n action may be dismissed by the plaintiff without order of court (a) by filing a notice of dismissal with the court and serving such notice on the defendant."

The trial court entered an order substituting Compton as a defendant "[p]ursuant to agreement of the attorneys for the parties."

court action. Compton also sought attorney fees and costs pursuant to ORS 279.067(4), ORS 20.105(1),[2] and ORCP 17.[3] In its third counterclaim, Compton reiterated the request for attorney fees and costs.

Steelman-Duff filed a reply to the affirmative defenses and counterclaims. Among other things, Steelman-Duff denied that attorney fees should be awarded to Compton.

The case then was tried. The trial court determined that Steelman-Duff was not entitled to relief, because ODOT had properly rejected its bid as nonresponsive. At the time of trial, ODOT had not yet awarded the subject contract. The trial court entered a judgment under ORCP 67 B[4] on Steelman-Duff's claims. The judgment awarded costs to both defendants and provided that Compton's counterclaim for

---

[2] ORS 20.105(1) (1993) provided in part:

"In any civil action, suit or other proceeding in a * * * circuit court * * * the court may, in its discretion, award reasonable attorney fees appropriate in the circumstances to a party against whom a claim * * * is asserted, if that party is a prevailing party in the proceeding and to be paid by the party asserting the claim * * *, upon a finding by the court that the party willfully disobeyed a court order or acted in bad faith, wantonly or solely for oppressive reasons."

The legislature amended ORS 21.105(1) in 1995. Or Laws 1995, ch 618, § 2. Those amendments do not apply to this case. See Or Laws 1995, ch 618, § 140(1) (providing that the amendments to ORS 21.105(1) apply only to "actions and proceedings that are commenced on or after" September 9, 1995).

[3] ORCP 17 provides in part:

"A. Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record who is an active member of the Oregon State Bar."

ORCP 17 further provides that a lawyer who files a pleading, motion, or paper may be, under certain circumstances, subject to sanctions, including attorney fees.

The legislature amended ORCP 17 in 1995. Or Laws 1995, ch 618, § 4. Oregon Laws 1995, chapter 618, section 140(2), provides that the amendments to ORCP 17 "apply to all actions, whether commenced before, on or after the effective date of this act." The text of ORCP 17 is not pertinent to our analysis today, however. Nothing herein should be read as deciding whether those amendments to ORCP 17 apply retroactively.

[4] ORCP 67 B provides in part:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

attorney fees would be resolved in a later proceeding. That judgment was not appealed.

Thereafter, ODOT awarded the subject contract to Compton. Compton voluntarily dismissed its first counter-claim and cross-claim and its second counterclaim, leaving only its request for attorney fees and costs.

Compton then filed a petition for attorney fees. The trial court denied the petition on the ground that Compton "was not a successful party" in a suit brought under ORS 279.067. The court entered a supplemental judgment deny-ing Compton's request for fees. In a second supplemental judgment, the trial court denied Compton's statement of costs on the ground that it was untimely.

Compton appealed both supplemental judgments, and the Court of Appeals affirmed both. *Steelman-Duff*, 135 Or App at 550. The Court of Appeals held that the trial court properly denied Compton's request for attorney fees, because Compton "was not a party to the only legal controversy [that ORS 279.067(4)] contemplates between an adversely affected bidder and a public contracting agency." 135 Or App at 549. With respect to costs, the Court of Appeals held that the trial court properly denied that request, because Compton's cost bill was untimely. *Id.* at 549-50.

Compton sought review only with respect to the sup-plemental judgment that denied its request for attorney fees, and this court allowed review.

■     Attorney fees are recoverable in a statutory action only when, and to the extent that, the statute so provides. *Cash Flow Investors, Inc. v. Union Oil Co.*, 318 Or 88, 91, 862 P2d 501 (1993). The statute that Compton asserts as the basis for its claim for attorney fees is ORS 270.067(4). The issue presented in this case thus requires us to interpret ORS 270.067(4) to determine whether the legislature intended to authorize the award of attorney fees to a litigant in Comp-ton's position. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (explaining method of statutory analysis).

ORS 279.067(4) provides that a court may order attorney fees and costs "to *a* successful party in a suit brought

under this section." (Emphasis added.) Compton argues that it is "a successful party" as that term is used in ORS 279.067(4). Compton reasons that it was, in fact, a party to the action brought by Steelman-Duff and that, because Steelman-Duff lost that action and because Compton was awarded the contract thereafter, Compton was "successful." Accordingly, Compton concludes, it is entitled to attorney fees.

Steelman-Duff counters that Compton was *not* "successful" with respect to the action *"brought under"* ORS 279.067, as required by ORS 269.067(4), in order to be entitled to an award of fees. Any action "brought under" the statute, reasons Steelman-Duff, is limited to the dispute between an aggrieved bidder—in this case, Steelman-Duff—and a public contracting agency—in this case, ODOT—with respect to the aggrieved bidder's bid. Applying that definition of the statutorily defined dispute to the facts before us, Steelman-Duff argues that Compton was not involved directly and, thus, could not have been "successful."

As often is true in close cases, the arguments of both sides are plausible. Certainly, the text of ORS 279.067(4) lends support to Compton's argument. To begin with, the legislature used the indefinite article, "a," rather than the definite article, "the," when it stated which parties may obtain attorney fees under ORS 274.067(4). In addition, the word "party" is not defined in the statute, thereby at least arguably permitting any entity that became a party to a proceeding brought under the statute to be eligible for attorney fees, whether or not that party was or could have been an original party plaintiff or defendant. Plaintiff, bringing the action under the statute, named Compton as a defendant. And, finally, Compton was "successful," at least when that adjective is used in its common and ordinary sense. Because of the outcome of the litigation, Compton's bid was accepted and it was able to profit from the project.

On the other hand, other parts of the text and context of ORS 279.067(4) support Steelman-Duff's reading. That statute provides that attorney fees may be awarded only to "a *successful* party * * * *in a suit brought under this section*." (Emphasis added.) By referring to "a suit *brought*

under this section" (emphasis added), ORS 279.067(4) limits an award of attorney fees to the specific form of action that the remainder of the section authorizes someone to bring. ORS 279.067(1) delineates the party that may, as a matter of right, *bring* an action under ORS 279.067—"[a]ny bidder adversely affected" or "any trade association of construction contractors acting on behalf of a member of the association"— and against whom the action may *be* brought—"the public contracting agency." Thus, the statute plausibly may be read as authorizing an award of attorney fees only to a party specifically identified elsewhere in the text: either to an aggrieved bidder or a trade association on the one hand, or to the contracting governmental agency on the other.

Additionally, by using the term *"successful * * * in a suit brought under this section"* (emphasis added), instead of the more common term "prevailing," ORS 279.067(4) could be read to limit the award of attorney fees to a party that achieves success as defined in the remainder of the section. ORS 279.067(1) allows an adversely affected bidder or trade association to sue a public agency, for the purpose of requiring the agency to comply with the public contracting law or of preventing the agency from violating the public contracting law. Under ORS 279.067(3), for example, the public agency is the defending party. The statute thus may be read to suggest that, because of the nature of the claim, only the adversely affected bidder or the agency can be "successful" in the action that the statute contemplates. That is, if a court holds that the public agency has violated or potentially violated the law, the plaintiff is successful. If a court holds that the public agency has not violated or potentially violated the law, the agency is successful. Under that rationale, and with respect to the kind of controversy contemplated by ORS 279.067, only the plaintiff or the agency will be a "successful" party.

Of course, the latter reading of the text and context of ORS 279.067(4) would defeat Compton's argument. Compton is not one of the parties identified in a two-sided action under ORS 279.067. Compton is not a "bidder adversely affected" by the agency's action, as that term is used in ORS 279.067, because Compton did not allege that ODOT acted

improperly when it announced its intention to award the contract to Compton. Indeed, Compton fully supported that decision by ODOT. Similarly, Compton is neither a "public contracting agency" nor a "trade association of construction contractors acting on behalf of a member of the association" as those terms are used in ORS 279.067; Compton does not contend otherwise.

■ Instead, Compton argues that ORS 279.067 should not be read to contemplate only a two-sided action here, because Compton was a "*necessary* party" (emphasis added) to the action brought by Steelman-Duff under ORS 279.067(1), within the meaning of ORCP 29 A.[5] Compton asserts that it was a "necessary party," because it had a substantial financial interest in the outcome of the action. If Steelman-Duff prevailed, Compton would not receive the contract. Compton therefore concludes that, because it was a "necessary party," Steelman-Duff's loss makes Compton "a successful party" in the action under ORS 279.067.

We conclude that Compton was not a "necessary party" in the present action under ORS 279.067(1). We disagree with that premise of Compton's argument for three reasons. First, Steelman-Duff made no claim in the action under ORS 279.067 respecting Compton's conduct. Steelman-Duff sought only to prevent ODOT from awarding the contract to someone else, because ODOT allegedly had erred in its conclusion that Steelman-Duff's low bid was nonresponsive. Steelman-Duff alleged no wrongdoing on the part of Compton and sought no affirmative relief from Compton.

The second reason why Compton was not a necessary party to the ORS 279.067 action is that ODOT had awarded no contract at the time of trial. Compton had no existing contractual right to protect.

---

[5] ORCP 29 A provides in part:

"A person who is subject to service of process shall be joined as a party in the action if (1) in that person's absence complete relief cannot be accorded among those already parties, or (2) that person claims an interest relating to the subject of the action and is so situated that the disposition in that person's absence may (a) as a practical matter impair or impede the person's ability to protect that interest[.]"

The third reason why Compton was not a necessary party to the action relates to the first two. Compton lacked a *direct* interest in the outcome of the controversy brought by Steelman-Duff. Compton did have an interest in the *indirect* effects of the outcome of the litigation between Steelman-Duff and ODOT. However, Compton's interest in the indirect effects of the outcome of the litigation is not the same as an interest in the controversy itself. *See Wright v. Hazen Investments, Inc.*, 293 Or 259, 261-64, 648 P2d 360 (1982) (holding that a lessor and a sublessor were "interested" but not "necessary" parties in litigation between the plaintiff and a sublessee). For a party to be a "necessary" party to a controversy, that party must have an interest in the subject matter of the litigation, and not merely an indirect financial interest in the outcome of the litigation. A party is a "necessary party" only if the court cannot resolve the subject matter of the litigation without the party's presence. *See id.* at 263 ("[a]lthough both [lessor and sublessor] had an 'interest' in the subject matter of the controversy, such 'interest' was not in any way part of the controversy so as to render either a necessary party"). In this action brought by Steelman-Duff, the issue was whether ODOT had violated the statutory scheme provided in ORS 279.011 to 279.067 when it rejected Steelman-Duff's bid. The subject matter of the litigation thus was only whether ODOT had followed the law in processing Steelman-Duff's bid; Compton's presence was not required for the disposition of that issue.

In summary, Compton was not a *necessary* party to the action under ORS 279.067(1), even though it was a party to the litigation. That does not end our inquiry, however, because, even if it was not a *necessary* party, Compton *was* "a" *party* to the proceeding that had been brought under the statute.[6] We therefore turn to the issue of availability of attorney fees, under ORS 279.067(4), to a party named by a plaintiff who was not a necessary party.

As may be seen from the foregoing summary, the text and context of ORS 279.067(4) do not resolve the controversy in this case in favor of either Compton or Steelman-Duff. The

---

[6] In the procedural posture of this case, we are not called on to decide whether Compton appropriately was made a party to the litigation; that is a given here.

reading given that statute by each remains plausible. It is not clear from our first-level analysis whether the legislature meant for that subsection to apply to any nonnecessary party involved in an action initiated under ORS 279.067 or whether, instead, the fee provision applies only to the party that initiated an action under ORS 279.067 and the public contracting agency that defends its application or proposed application of the public contracting law. Accordingly, we turn to the legislative history surrounding the passage of ORS 279.067. *PGE*, 317 Or at 611-12.

ORS 279.067 was enacted in 1983, as Senate Bill 190. Or Laws 1983, ch 690, § 27. ORS 279.067 (1983) provided:

> "Any bidder adversely affected may commence a suit in the circuit court for the county in which are located the principal offices of the local contract review board or the local government agency, for the purpose of requiring compliance with, or prevention of violations of, ORS 279.011 to 279.061 to matters or decisions of the board or agency. The court may order such equitable relief as it considers appropriate in the circumstances. A decision of the local contract review board or the local government agency shall not be voided if other equitable relief is available. *The court may order payment of reasonable attorney fees and costs to a successful party in a suit brought under this section.*" (Emphasis added.)[7]

Senate Bill 190 was proposed by the Executive Department and was referred to the Senate Committee on Local Government and Elections. Tape Recording, Senate Committee on Local Government and Elections, SB 190, March 9, 1983, Tape 30, Side A at 16 (statement of Gary Esgate, Committee Administrator). The purpose of the bill

---

[7] The legislature amended ORS 279.067 to its present form in 1990. Or Laws 1990, ch 6, § 1 (Spec Sess). When the legislature made those amendments in 1990 it: modified ORS 279.067(1); added three additional provisions, ORS 279.067(2), (3) & (5); moved the attorney fees provision to its own subsection, ORS 279.067(4); and added the phrase "on trial and appeal" to that attorney fees provision. The legislature did not change the operative wording of the attorney fees provision. Accordingly, the pertinent legislative history is the history surrounding the passage of SB 190, in 1983; the history surrounding the 1990 amendments is not pertinent. *See DeFazio v. WPPSS*, 296 Or 550, 561, 679 P2d 1316 (1984) ("views legislators have of existing law may shed light on a new enactment, but it is of no weight in interpreting a law enacted by their predecessors").

was, in part, to replace the then-extant system of ensuring that public agencies complied with the law concerning the awarding of public contracts. *Id.* at 23-27.

The bill, as first proposed, did not contain the provision that later became ORS 279.067(4). At a public hearing on SB 190, Stan Long, from the Department of Justice, testified in favor of the bill:

> "The bill that is before you requires a local oversight function. Whether that is adequate or not, or whether that is needed or not is a choice for you to make. I point out to you that if you are concerned about compliance * * * there's lots of ways to achieve that. There's lots of alternatives. The alternative that's presented to you in Senate Bill 190 is a local board to review those things. There are other alternatives that you can explore if you're interested in them. *One of the most effective ways to require compliance with state mandated programs is to provide for attorney fees for example in law suits that successfully challenge local officials' compliance.* You get some self executing enforcement by the bar association and by people who are actually interested in the outcome. And, I can tell you from personal experience, that one of the things that gets local officials' attention is the prospect that they pay if they lose." Tape Recording, Senate Committee on Local Government and Elections, SB 190, March 9, 1983, Tape 30, Side A at 165-82 (statement of Stan Long, Department of Justice) (emphasis added).

Senator Gardner questioned Long about the possibility of adding an attorney fees provision to the bill. *Id.* at 295-303. The following exchange occurred between Senator Gardner and Long:

> "[Long:] If you're worried about compliance with state statutes, * * * the way this bill addresses that problem is to say there will be a local oversight to take care of that. I was merely pointing out to you that that was an alternative that was selected to present to you, and there are other alternatives that weren't staffed and one of them is private enforcement.
>
> "[Sen. Gardner:] Or a combination. * * * Such as, if you've exhausted this remedy, then you can go to circuit court, and try to enforce those standards there. And if you win, you get attorney fees and costs. * * * Now that gives you arbitration [*sic*] at the end of the road, but you've got

some initial hazards to getting in there. You've got to front the costs of it. You, *the disappointed bidder, I presume. * * * I assume it would be these attorney fees are recoverable against the local jurisdiction?* Is that right?

"[Long:]   That's an alternative.

"[Sen. Gardner:]   Who else would they be recoverable from?

"[Long:]   * * * I would have in mind a traditional prevailing party kind of approach.

"[Sen. Gardner:]   *And the local jurisdiction would be the defendant * * *

"[Long:   And I would make that a two legged, and not a one legged provision so that * * *

"[Sen. Gardner:]   Either way * * *

"[Long:]   *You bet. Give the local government its fees if it wins.* That will sober up some of the incentives to proceed if you didn't think you're right.

"[Sen. Gardner:]   Well, if we do go the route of the bill, that may be something we want to put on there to make sure that there's some other incentives for adherence to the statute?" *Id.* at 303-40 (emphasis added).

The foregoing exchange shows, not surprisingly, that Senator Gardner and Long envisioned an attorney fees provision that would allow fees to either the aggrieved bidder or the governmental entity awarding the contract.[8] But it also shows that neither person even thought of, much less held a view concerning, the possibility that a third party would find itself enmeshed in such a proceeding.

After that exchange, the committee discussed other aspects of the bill. At that meeting, no other witness spoke in favor of adding an attorney fees provision, and the topic was not discussed further by any member of the committee.

At a later meeting of the Senate Committee on Local Government and Elections, various amendments to SB 190 were proposed. Tape Recording, Senate Committee on Local

---

[8] The original version of the statute contained no provision for a trade association to bring such an action.

Government and Elections, March 30, 1983, SB 190, Tape 46, Side B at 35. At the request of the committee, Bill Penhollow, a representative of the Association of Oregon Counties, explained the amendments. Tape Recording, Senate Committee on Local Government and Elections, SB 190, March 30, 1983, Tape 47, Side A at 122, Tape 46 Side B at 404 (statement of Bill Penhollow). *See also* Tape Recording, Senate Committee on Local Government and Elections, SB 190, March 30, 1983, Tape 47, Side A at 119 (statement of Sen. Heard) ("[t]he committee will recall that the chair asked Bill to chair a subcommittee to deal with some of the questions on this bill"). Penhollow stated:

> "Finally, on lines 12, 13 & 14, the question of attorney fees, which this committee was interested in, provides that: 'The court may order the payment of reasonable attorney fees on trial or on appeal to a successful party in a suit brought under this section.' So that attorney fees would go both ways." Tape Recording, Senate Committee on Local Government and Elections, SB 190, March 30, 1983, Tape 46, Side B at 397-404.

The quoted sentence was adopted verbatim by the committee and became the operative phrase at issue in this case. Tape Recording, Senate Committee on Local Government and Elections, SB 190, Tape 47, Side B at 58. The bill then was passed by the House, without further discussion of the attorney fees provision.

The legislative history surrounding the passage of the attorney fees provision now contained in ORS 297.067(4) clearly establishes that the legislators and witnesses who discussed the provision foresaw litigation cast only in traditional, two-sided terms and intended that attorney fees be available "both ways." The attorney fees provision originally envisioned by Senator Gardner would have awarded fees only to an aggrieved bidder who successfully challenged the public contracting agency's compliance with the public contracting law. Long suggested that the fee provision become a two-way street, and Gardner agreed. Penhollow then drafted the attorney fees provision to accommodate that suggestion.

Unfortunately, the foregoing history adds nothing to our knowledge of what the legislature would have intended,

had the possibility of a third party's presence in the action been called to its attention. It seems clear to us that no one even thought about that possibility, much less made a conscious policy choice with respect to it. Our review of the text, context, and legislative history of ORS 297.067(4) thus does not reveal whether the legislature intended to make the attorney fees provided in that statutory provision available to a non-necessary party that is not "[a]ny bidder adversely affected," "any trade association of construction contractors acting on behalf of a member of the association to protect interests common to construction contractor members," or "the public contracting agency" as those terms are used in ORS 297.067(1).

Because neither of the first two levels of scrutiny provides the answer that we seek, we are left to utilize various maxims of statutory construction to resolve the issue in this case. *See PGE,* 317 Or at 612 (discussing methodology). Even this level of statutory analysis is of little help. None of the usual maxims aids us in resolving the dispute, leaving us with no recourse but to use the maxim that this court has developed for just such situations: When all else fails, this court will attempt to decide the case in accordance with what it believes the legislature would have done, had it considered the question. *See PGE,* 617 Or at 612 (referring specifically to that maxim and citing *Security State Bank v. Luebke,* 303 Or 418, 423, 737 P2d 586 (1987), as illustrative of its application).

Even here, the issue is much in doubt. Rationales both ways easily can be posed.

We conclude, however, that the legislature most likely would have intended attorney fees to be awarded in this situation. We so conclude because we cannot identify any reason that the legislature, having once determined to use the availability of attorney fees as a "stick" to encourage and ensure compliance with the public bidding requirements of the law, would wish to deny attorney fees categorically to *any* party to such proceedings, so long as that party had a stake in the outcome, contributed to the process, and was "successful," as that term ordinarily is understood. We hold that the attorney fees provision in ORS 297.067(4) permits an award of

attorney fees to any party to a proceeding brought pursuant to ORS 297.067, whether or not that party is one of the kinds specifically enumerated in that statute.[9] The contrary conclusions of the Court of Appeals and of the circuit court were incorrect.

The decision of the Court of Appeals and the judgment of the circuit court are reversed. The case is remanded to the circuit court for further proceedings.

**DURHAM, J.,** concurring.

I agree with the majority's conclusion that petitioner is a "successful party in a suit brought under this section," within the meaning of ORS 279.067(4). However, in my view, no plausible ambiguity in the statute requires an exposition of its legislative history or a resort to court-created maxims of construction to divine the legislature's probable intention.

The majority concludes that ORS 279.067(4) is ambiguous in two respects. The first is the phrase "a suit brought under this section." I disagree. No reasonable doubt exists that this action is a suit brought under ORS 279.067. Neither the parties nor the Court of Appeals suggests that the meaning of the phrase is disputed or unclear. The majority's effort to discover an ambiguity in that phrase is unpersuasive.

The second source of ambiguity, according to the majority, is the term "successful." However, by prevailing, Compton was a "successful" party under any familiar definition of that term. The majority apparently agrees with that conclusion, because it holds, eventually, that Compton was " 'successful' as that term ordinarily is understood." 323 Or at 235-36.

The statute's key terms, and their context, make the legislature's intention clear. Therefore, our interpretive task is complete without an examination of legislative history or other secondary sources of legislative intent. Under our

---

[9] We note that the statute does not require an award of fees, nor do we hold that one is required in this case. ORS 297.067(4) provides that the court "may" award fees and, if so, is to decide what award is "reasonable." Those are issues for the circuit court on remand.

methodology, "we proceed no further." *See McIntire v. Forbes,* 322 Or 426, 429, 909 P2d 846 (1996) (so holding); *PGE v. Bureau of Labor and Industries,* 317 Or 606, 611, 859 P2d 1143 (1993) (if a statute's text and context make the legislature's intent clear, "further inquiry is unnecessary").

I would terminate our inquiry with an examination of the best evidence of the legislature's intention: the statute's words.

Fadeley and Unis, JJ., join in this concurring opinion.