Argued and submitted January 12, 1995, decision of the Court of Appeals and order of the circuit court are affirmed August 15, 1996

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## FREDERICK WILLIAM COOKMAN,
*Respondent on Review.*

(CC 91-1524; CA A73459; SC S41424)

920 P2d 1086

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Richard Lee Barton, of Barton and Associates, Portland, argued the cause and filed the briefs for respondent on review.

Gayle A. Shields, Michael A. Greenlick, and Ronald M. Fishback, Portland, filed a brief on behalf of *amicus curiae* Oregon Criminal Defense Lawyers Association.

Before Carson, Chief Justice, and Gillette, Fadeley, Graber, and Durham, Justices.**

FADELEY, J.

---

** Van Hoomissen, J., did not participate in the consideration or decision of this case; Unis, J., retired June 30, 1996, and did not participate in this decision.

Gillette, J., filed an opinion concurring in part and dissenting in part.

## FADELEY, J.

Defendant was indicted for committing three felonies between June 1 and September 1, 1986: (1) using a child in a display of sexually explicit conduct, ORS 163.670; (2) dealing in depictions of a child's sexual conduct, *former* ORS 163.673 (1987), *repealed by* Or Laws 1995, ch 768, § 16; and (3) sexual abuse in the first degree, ORS 163.425 (1985). According to the indictment, all victims were under 18 years of age at the time of the crimes. A warrant for defendant's arrest issued on October 10, 1991.

Defendant demurred, arguing that the state was time-barred from prosecuting him.[1] Specifically, defendant argued that his prosecution was barred by the three-year statute of limitations that was in effect when he allegedly committed the crimes, ORS 131.125 (1985). After that three-year period had expired, the legislature amended ORS 131.125 to extend the limitations period to six years with respect to the particular crimes at issue. Defendant argued that, assuming that the legislature intended for the amendments to apply to revive a previously time-barred prosecution, that application of the law would violate the state and federal constitutional prohibitions against *ex post facto* laws.[2] The trial court allowed the demurrer and entered an order dismissing the indictment.

On the state's appeal,[3] a divided Court of Appeals, sitting in banc, affirmed. *State v. Cookman*, 127 Or App 283,

---

[1] ORS 135.630 provides, in pertinent part:

"The defendant may demur to the accusatory instrument when it appears upon the face thereof:

"* * * * *

"(5) That the accusatory instrument contains matter which, if true, would constitute a * * * legal bar to the action[.]"

[2] Article I, section 21, of the Oregon Constitution, provides:

"No *ex-post facto* law * * * shall ever be passed[.]"

Article I, section 10, clause 1, of the United States Constitution, provides:

"No State shall * * * pass any * * * ex post facto Law."

At the hearing on defendant's demurrer, the state also raised an issue as to whether revival of a lapsed prosecution violates due process.

[3] ORS 138.060(1) permits the state to appeal from an order "made prior to trial dismissing or setting aside the accusatory instrument."

873 P2d 335 (1994). The lead opinion stated that "revival of a lapsed prosecution is so extremely unfair that it transgresses the recognized due process principle of 'fundamental fairness.'" 127 Or App at 286.

A concurrence agreed with the outcome, but would not reach the due process issue, because "the trial court's judgment can and should be affirmed on state constitutional grounds." *Id.* at 290 (Leeson, J., concurring). The concurrence then stated that ORS 131.125(2), as amended in 1991 and as applied to defendant, "deprives him of a vested and complete procedural defense" in violation of the Oregon Constitution's prohibition against *ex post facto* laws. *Id.* at 293.

A four-judge dissent stated that defendant had not raised a due process issue at trial, *id.* at 293 (De Muniz, J., dissenting); that, in any case, the majority's due process analysis was in error, *id.* at 295-96; and that the dissent would have held that the *ex post facto* provisions of the state and federal constitutions do not bar the prosecution, *id.* at 299.

The state petitioned for review, and we allowed the petition. For the reasons that follow, we affirm the decision of the Court of Appeals and the order of the circuit court.

## STATUTORY ANALYSIS

ORS 131.105 provides that a "criminal action must be commenced within the period of limitation prescribed in ORS 131.125 to 131.155." Before 1989, ORS 131.125(2)(a) provided that a prosecution must be commenced within three years after the commission of a felony other than murder or manslaughter. That provision was in effect when defendant allegedly committed the crimes at issue. Under it, the state had to commence its prosecution of defendant by, at the latest, September 1, 1989. It did not. A prosecution is "commenced" when a "warrant or other process is issued." ORS 131.135. That occurred, in this case, on October 10, 1991. This prosecution thus is untimely under the pre-1989 version of ORS 131.125.

In 1989, the legislature amended ORS 135.125 to lengthen the period of limitations for certain felonies, including the ones for which defendant was indicted, to six years

from the time the crime was committed, if the victim was less than 18 at the time of the crime. Or Laws 1989, ch 831, § 1. Those amendments took effect on October 3, 1989. However, by that date, the period of limitations in which the state had to prosecute defendant under the pre-1989 statute already had expired.[4]

In 1991, the legislature again amended ORS 131.125. Among those amendments was section 1 of an Act contained in Oregon Laws 1991, chapter 388:

"ORS 131.125 is amended to read:

"* * * * *

"(2) A prosecution for any of the following felonies may be commenced within six years after the commission of the crime **or**, if the victim[,] at the time of the crime[,] was under 18 years of age, **anytime before the victim attains 24 years of age or within six years after the offense is reported to a law enforcement agency or other governmental agency, whichever occurs first**:

"* * * * *

"(j) Sexual abuse in the first degree under ORS 163.425.

"(k) Using a child in a display of sexual conduct under ORS 163.670.

"(L) Dealing in depictions of a child's sexual conduct under ORS 163.673." (Deletions in brackets; additions in boldface.)

Section 2 of the same Act provided:

"The amendments to ORS 131.125 by section 1 of this Act apply to all causes of action whether arising before, on or after the effective date of this Act, and shall act to revive any cause of action barred by ORS 131.125 (1989 Edition) if the action is commenced within the time allowed by ORS 131.125 as amended by section 1 of this Act."[5]

---

[4] The Court of Appeals decided in *State v. Tyler*, 108 Or App 378, 815 P2d 1289 (1991), that the legislature did not intend the *1989* amended statute to apply retroactively to prosecutions already barred by the pre-1989 statute at the time the 1989 amendments took effect. The state does not contend that *Tyler* was wrongly decided.

[5] Section 2 was not codified, but merely noted after ORS 131.125 in the 1991 edition of the Oregon Revised Statutes.

The effective date of the Act was September 29, 1991. It is the provisions of section 2 on which the state relies to argue that the lengthened criminal statute of limitations applies retroactively to revive prosecutions previously barred before 1989.

The Court of Appeals held that the legislature intended the 1991 amendments to revive the present prosecution, even though that prosecution was barred by the pre-1989 version of ORS 131.125, rather than by "ORS 131.125 (1989 Edition)." 127 Or App at 285. The interpretive question here is whether the legislature intended to revive only prosecutions barred by the 1989 version of ORS 131.125 or also to revive prosecutions barred by the pre-1989 version of ORS 131.125.

■ In interpreting a statute, we seek to discern the legislature's intent. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). At the first level of analysis, we consider text and context. *Ibid.*

Section 2 of the 1991 Act, quoted above, begins by providing that the amendments to the statutes of limitation "apply to *all* causes of action whether arising *before*, on or after the effective date of this Act." (Emphasis added.) With respect to crimes, a "cause of action" arises when the crime is committed. The broad sweep of the first half of section 2 covers the crimes alleged here. The second half of section 2 creates an ambiguity, however, by specifying that the amendments are meant to "revive any cause of action barred by ORS 131.125 (*1989 Edition*)." (Emphasis added.) The context does not resolve that ambiguity in the text.

Because it is not clear from text and context whether the legislature intended the 1991 amendments to revive a prosecution otherwise barred by the pre-1989 version of ORS 131.125, we turn to legislative history. *See PGE*, 317 Or at 611-12 (setting forth method). We have examined the legislative history, but it provides no direct answer or insight to resolve this question. Therefore, we move to the third level of analysis by resorting to general maxims of statutory construction. *See ibid.* (setting forth method).

■■ The most apt maxim here is that the court will attempt to determine how the legislature would have

intended the statute to apply had it considered the issue. *See Steelman-Duff, Inc. v. Dept. of Transportation*, 323 Or 220, 235, 915 P2d 958 (1996) (describing and applying principle). With that maxim in mind, we believe that the 1991 legislature would have intended the statute to revive prosecutions that otherwise would be barred by the pre-1989 version of ORS 131.125, as well as prosecutions that otherwise would be barred by the 1989 version.

First, it is quite clear that the substantive 1991 amendments were intended to make it easier for the state to prosecute the listed crimes. Second, the basic thrust of Oregon Laws 1991, chapter 388, section 2, is to take advantage of retroactivity as broadly as possible. Third, the legislature had before it the opinion of at least one member to the effect that retroactive revival of a time-barred prosecution did not violate constitutional proscriptions against *ex post facto* laws. Tape recording, House Judiciary Family Justice Subcommittee, February 13, 1991, Tape 31, Side A at 60-67 (comments of Representative Edmunson). In the circumstances, we see no reason why the legislature would have intended that the advantage conferred on the state be limited to revival of prosecutions barred only by the 1989 version of the statute of limitations. We hold, therefore, that the 1991 amendments are to be read to revive all prosecutions of the listed crimes when those prosecutions would have been time-barred under the 1989 *or* the pre-1989 version of ORS 131.125, provided that the prosecution is commenced within the time allowed by the 1991 amendments.

## STATE CONSTITUTIONAL ANALYSIS

■ ■ This court considers state constitutional claims before considering federal constitutional claims. *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983); *Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981). Accordingly, we turn to the issue raised under Article I, section 21, of the Oregon Constitution, which prohibits *ex post facto* laws. In interpreting a provision of the Oregon Constitution, we consider "[i]ts specific wording, the case law surrounding it, and the historical circumstances that led to its creation." *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992).

## 1. *Wording*

■ Article I, section 21, provides, simply, that "[n]o *ex-post facto* law * * * shall ever be passed." That is, it forbids the passage of laws "after the fact."

■■ This provision ought not be read to forbid laws from having any retrospective application, however. Laws are, by design, applicable to historical facts. *See* Bryant Smith, *Retroactive Laws and Vested Rights*, 5 Tex L Rev 231, 233 (1927) (discussing concept of retroactivity). Rather, from its wording, the provision forbids only those laws that are designed to be applicable to facts that have occurred *before the passage of the laws*. In short, the focus of this provision is on the time when a law takes effect, *State v. Robertson*, 293 Or 402, 408 n 4, 649 P2d 569 (1982): A law may not affect events to which it relates retroactively, if those events occurred before the law's effective date.

## 2. *Cases*

■ Despite Article I, section 21's seemingly broad scope, this court has restricted that provision's prohibition to criminal laws, *Fisher et al. v. City of Astoria*, 126 Or 268, 286, 269 P 853 (1928), and, further, to only certain kinds of criminal laws:

> "Generally speaking, *ex post facto* laws punish acts that were legal at the time they occurred, change the punishment for those acts,[6] or deprive the defendant of a defense for those acts." *State v. Gallant*, 307 Or 152, 155, 764 P2d 920 (1988).

In a similar vein, this court has quoted with approval the United States Supreme Court's understanding of the scope of the *ex post facto* provision contained in Article I, section 10, of the federal constitution, on the assumption that that provision's scope is similar to the scope of Article I, section 21:

> "The Court explained the meaning of the *Ex Post Facto* Clause as follows:

---

[6] To be more precise, as to the punishment factor, Article I, section 21, prohibits changes in punishment that make the punishment more burdensome. That is, a law must impose additional or increased punishment before it falls within the scope of that prohibition. *State v. Wille*, 317 Or 487, 502, 858 P2d 128 (1993); *State v. Smith*, 56 Or 21, 26, 107 P 980 (1910).

" ' "It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto*." ' [*Collins v. Youngblood*, 497 US 37, 42, 110 S Ct 2715, 111 L Ed 2d 30 (1990)] (quoting *Beazell v. Ohio*, 269 US 167, 169-70, 46 S Ct 68, 70 L Ed 216 (1925)).

"In summary, the Court stated, '[l]egislatures may not retroactively alter the definitions of crimes or increase the punishment for criminal acts.' *Id.* at 42." *State v. Wille*, 317 Or 487, 502, 858 P2d 128 (1993).[7]

The state has conceded before this court that count 2 of the indictment—charging defendant with dealing in depictions of a child's sexual conduct, ORS 163.673—falls within one of the above-described categories of penal law. Specifically, the state concedes that application of ORS 163.673 to defendant violates Article I, section 21, because that application would punish an act that was legal when done.

 From our independent analysis, the state's concession appears to be well taken.[8] Defendant allegedly violated ORS 163.673 between June 1 and September 1, 1986. ORS 163.673 was first enacted by the 1987 legislature. Or Laws 1987, ch 864, § 4. Neither the state nor this court has found anything to suggest that the conduct made criminal by that law previously had been made criminal under some other statute. Thus, ORS 163.673, as applied to defendant, punishes him retroactively for conduct that was *not criminal at all* when done. That application violates Article I, section 21. Defendant cannot be convicted for engaging in conduct that was not, at the time of the conduct, a crime.

---

[7] This court has previously explained that it cites federal cases when interpreting Oregon law only when it finds the views expressed there persuasive, not because it is bound to do so. *Kennedy*, 295 Or at 267. This court also has explained that its past reliance on the Supreme Court's pronouncements when construing Oregon's law do not imply that the meaning of Oregon's law is forever fixed to the federal courts' understanding of analogous federal law. *Id.* at 271.

[8] *See State v. Bea*, 318 Or 220, 224, 864 P2d 854 (1993) (court need not accept a concession concerning a legal conclusion).

As for the remaining two felony counts—using a child in a display of sexually explicit conduct and sexual abuse in the first degree—the question still remains whether Article I, section 21, permits the retroactive application of an amended, and longer, statute of limitations to revive prosecutions that already were time-barred before the. amendment took effect.

3. *History*

Article I, section 21, was adopted by convention in 1857. The record of that convention does not indicate the convention's intent in adopting the provision. *See* Charles Henry Carey, *The Oregon Constitution and Proceedings and Debates of the Constitutional Convention of 1857* (1926). However, it appears that Article I, section 21, was derived from the Indiana Constitution of 1851, specifically, Article I, section 24, of that Constitution.[9] W. C. Palmer, *The Sources of the Oregon Constitution*, 5 Or L Rev 200, 202 (1926). Article I, section 24, of the 1851 Indiana Constitution is itself substantially similar to Article I, section 18, of the 1816 Indiana Constitution.[10]

In 1822, the Indiana Supreme Court construed the 1816 provision as follows:[11]

"The words *ex post facto* have a definite, technical signification. The plain and obvious meaning of this prohibition is, that the Legislature shall not pass any law, after a fact done by any citizen, which shall have relation to that fact, so as to punish that which was innocent when done; or to add to the punishment of that which was criminal; or to increase the malignity of a crime; or to retrench the rules of evidence, so as to make conviction more easy." *Strong v. The State*, 1 Blackf 193, 196 (1822) (citing *Calder v. Bull*, 3 US (3 Dall) 386, 1 L Ed 648 (1798), among other authorities).[12]

---

[9] Article I, section 24, of the Indiana Constitution of 1851, provides: "No *ex post facto* law * * * shall ever be passed."

[10] Article I, section 18, of the Indiana Constitution of 1816, provided: "No *ex post facto* law * * * shall ever be made."

[11] We have been unable to locate any pre-1857 Indiana decisions interpreting the *ex post facto* provision of the 1851 constitution. *See Priest*, 314 Or at 418-19 ("decisions made after Oregon's statehood do not establish the meaning of the earlier-adopted language in the Oregon Constitution").

[12] *Strong* held that a retroactive change in the punishment for perjury, from whipping not exceeding 100 stripes to imprisonment not exceeding seven years, was permissible under the *ex post facto* clause at issue. 1 Blackf at 195-97.

In 1845, that court made explicit what was implicit in *Strong*; that the *ex post facto* clause of the 1816 Indiana Constitution was limited to criminal laws only. *Andrews v. Russell*, 7 Blackf 474, 475 (1845).

It is readily obvious that those Indiana decisions do not add much to this court's previously announced understanding of Article I, section 21, discussed above. *But see Gallant*, 307 Or at 155 (application of a uniform rule of evidence of general application that "did not affect a substantive right" in a trial for a crime committed before the rule was adopted does not violate Article I, section 21).

Be that as it may, the history of the *ex post facto* clauses found in the various state constitutions,[13] as well as in the federal constitution, extends beyond the founding of our republic, and may be traced back to English law, and further back to Roman law, *Hall v. Northwest Outward Bound School*, 280 Or 655, 658, 572 P2d 1007 (1977), if not to Greek law, Elmer E. Smead, *The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence*, 20 Minn L Rev 775, 775 (1936). Thus, for instance, Blackstone, writing in the 1760s, instructs us:

> "[W]hatever way is made use of [to notify the people of the legislature's resolutions], it is incumbent on the promulgators to do it in the most public and perspicuous manner; not like Caligula, who (according to Dio Cassius) wrote his laws in a very small character, and hung them up on high pillars, the more effectually to insnare the people. There is still a more unreasonable method than this, which is called the making of laws *ex post facto*; when after an action (indifferent in itself) is committed, the legislator then for the first time declares it to have been a crime, and inflicts a punishment upon the person who has committed it. Here it is impossible that the party could foresee that an action, innocent when it was done, should be afterwards converted to guilt by a subsequent law; he had therefore no cause to abstain from it; and all punishment for not abstaining must of consequence be cruel and unjust. All laws should be therefore made to commence *in futuro*, and be notified

---

[13] It appears that, at the present time, only six states—Connecticut, Delaware, Hawaii, Kansas, New York, and Vermont—do not prohibit "retroactive," "retrospective," or "*ex post facto*" laws in their constitutions.

before their commencement[.] 1 William Blackstone, Commentaries on the Laws of England 46 (1807) (footnote omitted).

Closer to home, James Madison, in urging the State of New York to ratify the federal constitution, between 1787 and 1788, wrote:

"Bills of attainder, *ex post facto* laws, and laws impairing the obligation of contracts, are contrary to the first principles of the social compact, and to every principle of sound legislation. The two former are expressly prohibited by the declarations prefixed to some of the state constitutions, and all of them are prohibited by the spirit and scope of these fundamental charters. Our own experience has taught us, nevertheless, that additional fences against these dangers ought not to be omitted. Very properly, therefore, have the convention added this constitutional bulwark in favor of personal security and private rights; and I am much deceived, if they have not, in so doing, as faithfully consulted the genuine sentiments, as the undoubted interests of their constituents. The sober people of America are weary of the fluctuating policy which has directed the public councils." *The Federalist No. 44* (James Madison).

It was to Blackstone, as well as to the "author of the *Federalist*," to whom United States Supreme Court Justice Chase turned, in 1798, to support his now classic formulation of the *ex post facto* prohibition:

"I will state what laws I consider *ex post facto* laws, within the words and the intent of the prohibition. 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender. All these, and similar laws, are manifestly unjust and oppressive. * * * The celebrated and judicious Sir William Blackstone, in his commentaries, considers an *ex post facto* law precisely in the same light as I have done. His opinion is confirmed by his successor, Mr. Wooddeson; and by the author of the *Federalist*, who I

esteem superior to both, for his extensive and accurate knowledge of the true principles of government." *Calder*, 3 US (3 Dall) at 390-91 (seriatim opinion).

Whatever the merits of Justice Chase's formulation with regard to the federal constitution,[14] as with Blackstone's *Commentaries* and *The Federalist*, Chase's opinion was available to the framers of the Oregon Constitution. Perhaps more importantly, it also was cited by the Indiana Supreme Court in *Strong*, a decision that was available to the framers of the Oregon Constitution when they decided to adopt the Indiana *ex post facto* provision in our state constitution.

### 4. *Application of Principles*

With the foregoing materials in mind, we return to the issue at hand—whether application of the 1991 amendments to revive defendant's time-barred prosecution violates Article I, section 21—and to this court's previously announced categories of penal law that are proscribed by Article I, section 21. To recapitulate, the categories are: (1) laws that punish acts that were legal before the enactment of those laws; (2) laws that impose greater or additional punishment than that available before the enactments of those laws; and (3) laws that deprive the defendant of a defense. *Wille*, 317 Or at 502; *Gallant*, 307 Or at 155.

As already noted, application of the 1991 amendments to revive defendant's prosecution for two kinds of conduct committed in 1986 does not punish acts that were innocent before the amendments. Thus, the question becomes whether application of those amendments to defendant imposes a more burdensome punishment or deprives him of a defense.

---

[14] It is difficult to tell from whence Chase derived his formulation. It should be evident that neither Blackstone nor *Federalist No. 44* specified the workings of the prohibition against *ex post facto* laws in as great a detail, and in quite the same way, as Chase. It should perhaps be telling that Chase thought, as an initial matter, that "natural law," defined by "the purposes for which men enter into society," prohibits the making of *ex post facto* penal laws or, indeed, of any law that violates "the right to an antecedent lawful private contract," or "of private property." *Calder*, 3 US (3 Dall) at 387-89. As such, Chase believed that the framers of the federal constitution introduced the *ex post facto* clause of that constitution, applicable to the states, out of mere "greater caution." *Id.* at 389.

The expiration of a criminal statute of limitations confers a complete defense to a prosecution for a crime. An application of an extended period of limitations to revive a prosecution that already became time-barred before the effective date of the extension necessarily deprives a defendant of that complete defense.

An expired period of limitations operates like a legislative waiver, pardon, or grant of immunity, on a condition (the passage of a specified period of time) that has been fully met. Whatever the most apt analogy, the statute of limitations gives a defendant, on the date the specified period expires, a complete defense. The sovereign, having surrendered utterly its right to prosecute after a certain time, cannot, after that time, revive its right to prosecute without running afoul of the *ex post facto* prohibition.

We hold that Article I, section 21, of the Oregon Constitution prohibits the retroactive application of an amended criminal statute of limitations, extending the period of limitations, to revive prosecutions that already were time-barred when the amendment took effect. To the extent that Oregon Laws 1991, chapter 388, section 2, requires such a retroactive application, that provision is unconstitutional under Article I, section 21. Accordingly, the trial court did not err in allowing defendant's demurrer to the indictment. The Court of Appeals did not err in sustaining that order.[15]

The decision of the Court of Appeals and the order of the circuit court are affirmed.

**GILLETTE, J.,** concurring in part, dissenting in part.

I concur with the majority's holding that application of ORS 163.673 to defendant violates Article I, section 21, because to do so would punish defendant for an act that was legal when committed. As the majority states, such an application falls squarely within the embrace of the prohibition against *ex post facto* laws found in Article I, section 21. I also concur with the majority's conclusion that, in amending ORS

---

[15] Because of our disposition of the case, we need not reach any federal constitutional issues.

135.125, the legislature intended that the extended statute of limitations apply retroactively to all prior crimes and that the retroactive scope revived all prosecutions that would have been barred under the preexisting statute of limitations.

However, I dissent from the majority's holding that application of amended ORS 135.125 to defendant's crime violated Article I, section 21. Unlike the first situation, the extension of a statute of limitations does not fall within the protection afforded by Article I, section 21. Therefore, I would hold that there was no violation of Article I, section 21, in this case. And, as I shall explain, I would hold that application of amended ORS 135.125 to defendant's prosecution did not violate any other state or federal constitutional protections.

## EX POST FACTO

The majority begins its *ex post facto* analysis by asserting (correctly, I believe) that the scope of Article I, section 21, is the same as the historical scope of Article I, section 10, of the United States Constitution. *State v. Wille*, 317 Or 487, 502, 858 P2d 128 (1993). However, as I shall describe, the majority misstates the scope of the *ex post facto* protection provided by federal law and, having misstated it, then errs in construing the scope of Article I, section 21.

In *Wille*, this court adopted the longstanding federal *ex post facto* standard enunciated in *Collins v. Youngblood*, 497 US 37, 110 S Ct 2715, 111 L Ed 2d 30 (1990); *Beazell v. Ohio*, 269 US 167, 46 S Ct 68, 70 L Ed 216 (1925); and *Calder v. Bull*, 3 US (3 Dall) 386, 1 L Ed 648 (1798). With respect to the category of *ex post facto* protection at issue in this case—defenses—the *Wille* court quoted with approval the following formulation from *Collins*, quoting *Beazell*:

> " ' "It is settled * * * that any statute which * * * deprives one charged with crime *of any defense available according to law at the time when the act was committed,* is prohibited as ex post facto." ' "

*Wille*, 317 Or at 502 (emphasis added). As expressly—and correctly—stated in that formulation, *ex post facto* violations are limited to circumstances in which a defendant is deprived of a defense that was available *at the time that the crime was*

*committed*. The question thus becomes: Do statutes of limitations fit within the foregoing rule?

They do not. Statutes of limitations *never* are available as a defense at the time that a crime is committed. To be sure, a statute of limitations provides a *potential* bar to prosecution at a future circumscribed date. However, that is not the same as providing an *available* defense *at the time that the crime is committed*. A statute of limitations only is "available" to the extent that, if the state should fail to prosecute within a certain period of time, the defendant then may invoke it to prevent a prosecution from proceeding.

The foregoing point concerning the inchoate nature of a statute of limitations defense at the time that the crime is committed points up the fundamental way in which such statutes differ in purpose and effect from those that characterize an offense itself, or defenses to that offense: *A statute of limitations does not affect the criminal nature of the act committed*. A person who invokes successfully a statute of limitations bar is just as much a criminal as he or she was the day before the statute ran. In contrast, traditional defenses, such as self-defense and insanity, are available at the time the crime is committed. They transform what otherwise would have been a criminal act into something not criminal in nature (or of a lesser criminal nature) when applied to the defendant.[1] Indeed, other jurisdictions unanimously have concluded that an extension of a statute of limitations, at least before the original limitations period had expired, does not implicate *ex post facto*.[2]

---

[1] A federal circuit court recently made this same distinction in assessing whether *ex post facto* extends to statutes of limitations. It stated:

"Pleading an expired limitations period is certainly a defense in the general sense that it is a defensive measure. More particularly, however, it is a matter in bar of prosecution and as such is distinguishable from a 'pure' defense, which defeats one or more of the elements of the crime. * * * Thus, 'defense' as used in [*Beazell v. Ohio* and *Collins v. Youngblood*] means a defense related to the definition or elements of the crime. It does not have the much broader meaning assigned to it by defendants, because a plea in bar is not related to the definition of a crime and is not pleaded as a nullification of one or more of its elements or as an excuse or justification for its commission."

*United States v. Knipp*, 963 F2d 839, 843 (6th Cir 1992).

[2] *See, e.g.*, *United States v. Taliaferro*, 979 F2d 1399 (10th Cir 1992); *United States v. Knipp*, 963 F2d 839 (6th Cir 1992); *Clement v. United States*, 266 F2d 397 (9th Cir), *cert den* 359 US 985 (1959); *Falter v. United States*, 23 F2d 420 (2d Cir),

The majority misses the foregoing pivotal distinction and, instead, wrestles statutes of limitations into the realm of protections to which the rule against *ex post facto* laws applies. It does so by modifying the longstanding legal standard. The majority "rephrases" the protection afforded by the rule against *ex post facto* laws by asserting that Article I, section 21, proscribes any law "that deprive[s] the defendant of a defense." 324 Or at 31. The majority then claims that *ex post facto* principles apply, because "the statute of limitations gives a defendant, on the date the specified period expires, a complete defense." *Id.* at 32. Under that reasoning, once the defense becomes complete, it cannot be taken away. However, as has been discussed, the correct standard looks to whether a law removes a defense that was available *at the time that the crime was committed*, not as the majority chooses to do it—at the time when the later law was enacted. I would respect the traditional formulation and hold that, because the statutory amendment at issue in this case did not take away any defense that was available to defendant *at the time that he committed his criminal offense*, there was no violation of Article I, section 21.

## DUE PROCESS

Having concluded that there was no *ex post facto* violation in this case, the question remains whether application of the revived statute of limitations against defendant is unlawful for some other reason. A divided Court of Appeals held that such an application transgressed defendant's federal due process right to "fundamental fairness." 127 Or App at 286. In my view, that conclusion is wrong.

The argument that revival of a prosecution (effectuated by extending an expired statute of limitations) violates a defendant's due process rights was first articulated by Judge Learned Hand, in *Falter v. United States*, 23 F2d 420, 425-26 (2d Cir), *cert den* 277 US 590 (1928):

---

*cert den* 277 US 590 (1928); *People v. Russo*, 439 Mich 534, 487 NW2d 698 (1992); *Commonwealth v. Johnson*, 520 Pa 165, 553 A2d 897 (1989); *Commonwealth v. Bargeron*, 402 Mass 589, 524 NE2d 829 (1988); *State v. Creekpaum*, 753 P2d 1139 (Alaska 1988); *People v. Whitesell*, 729 P2d 985 (Colo 1986); *People v. Callan*, 174 Cal App 3d 1101, 220 Cal Rptr 339 (1985); *People v. Massarella*, 80 Ill App 3d 552, 400 NE2d 436 (1979) (all so holding).

"Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuits, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it."

Those courts that have considered this question invariably have utilized the same reasoning, oftentimes quoting from *Falter*.[3] *See, e.g., United State v. Taliaferro*, 979 F2d 1399, 1403 (10th Cir 1992); *Clements v. United States*, 266 F2d 397, 399 n 4 (1959); *People v. Russo*, 439 Mich 534, 487 NW2d 698, 703 n 18 (1992).

While I do not often find myself in disagreement with the eloquent Learned Hand, I feel perfectly comfortable in being in that position here. To my mind, there is nothing unfair or dishonest in the state's choosing to extend a statute of limitations, even where the statute, as applied to a particular defendant, already had expired when the extension occurred. Rather, the same result should flow, whether the statute was extended before the preexisting limitations period had expired or thereafter.

A statute of limitations is not a fundamental right of a criminal. Indeed, historically, there was no statute of limitations on the prosecution of common-law crimes. Even today, most jurisdictions, including Oregon, have no statute of limitations for the crime of murder. Statutes of limitations are, instead, regulatory measures that have been created by legislatures as a matter of policy to deal with the practical difficulties of prosecuting stale crimes. *See, e.g., United States v. Gouveia*, 467 US 180, 192, 104 S Ct 2292, 81 L Ed 2d 146 (1984) (stating that statutes of limitations are a guarantee against bringing stale crimes); *United States v. Marion*, 404 US 307, 322-23, 92 S Ct 455, 30 L Ed 2d 468 (1971)

---

[3] The due process argument raised by Hand was *dictum*, because that case did not involve a revival of a previously barred prosecution. I have found only one court that has *held* a revival of a previously time-barred prosecution was unlawful. *Commonwealth v. Rochleau*, 404 Mass 129, 533 NE2d 1333 (1989). In that case, the court merely concluded, with little analysis, that such an application was unlawful.

(same); *see also Wilder v. Haworth*, 187 Or 688, 213 P2d 797
(1950) (civil case; stating that statutes of limitations were
designed to protect citizens from stale and vexatious claims);
*Eastman v. Crary*, 131 Or 694, 284 P 280 (1930) (civil case;
stating that statutes of limitations constitute a declaration of
public policy). An expired limitations period thus is not some-
thing upon which a criminal legitimately should be able to
rely, as of *right*, to evade prosecution. Certainly, the state
may not violate its own laws and prosecute a defendant
under an expired statute of limitations. However, the legis-
lature is free to change the law in such a way that an expired
limitations period becomes revived.

To hold, as Judge Hand apparently was willing to do,
that the revival of a barred criminal prosecution would vio-
late due process, but extending an unexpired limitations
period would not, would (to me) create the following anomaly:
A criminal could be prosecuted where the legislature
extended the applicable statute of limitations from three
years to six years so long as the extension occurred two years
and 364 days after the crime was committed. However, if the
extension occurred three years and one day after the crime
was committed a criminal could not be prosecuted.

The foregoing distinction displays the arbitrary
nature of a statute of limitations and, in my view, the equally
arbitrary reasoning that must be used to find some sort of
due process requirement for the difference in outcomes. To
whatever extent (if any) the two criminals relied on the stat-
ute of limitations in existence at the time of their crimes, I
cannot perceive how that reliance merits being exalted to the
level of a constitutional protection against modification after
the original limitations period has expired. It does not seem
unfair to me to prosecute both criminals. Indeed, it would
appear far more unfair, both to the victim and to society, to
let either criminal evade prosecution, assuming that society
was willing to expend its resources to pursue the matters.

In amending ORS 135.125, the legislature was rec-
ognizing that the nature of the offenses involved was such
that the fact of the crimes might not even come to light until
after the old statute of limitations had run: The nature of the

offense, the age of the victims, and the often close relationship between victim and offender all play a part in that phenomenon. In effect, a former legislature had said, "We'll not prosecute these crimes after three years, because the nature of the evidence and the availability of scarce prosecutorial resources dictates that we not do so." A later legislature then said, "Our former policy choices may have had some validity, but we perceive the harm flowing to society from these crimes, and the issues pertaining to the reporting of the crimes, to be of a different and greater magnitude. We therefore choose to hold these criminals accountable to society for a longer period of time." In my view, the second legislative choice was as valid as the first, and no considerations of *ex post facto* or due process protections prevented it. I would hold that applying amended ORS 135.125 to defendant's prosecution did not violate any state or federal constitutional protections.

I respectfully dissent.