Argued and submitted January 12, resubmitted en banc August 8, affirmed
December 19, 2007

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RUBEN E. RODRIGUEZ,
*Defendant-Appellant.*

Malheur County Circuit Court
04065087C; A126339

175 P3d 471

Leland R. Berger argued the cause for appellant. With him on the brief was Anthony L. Johnson.

Laura S. Anderson, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Jesse Wm. Barton filed the brief *amicus curiae* for Gregory Alan Robben and Oregon Criminal Defense Lawyers Association.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Wollheim, Schuman, Ortega, Rosenblum, and Sercombe, Judges.

LANDAU, J.

Sercombe, J., dissenting.

## LANDAU, J.

At issue in this case is the meaning of ORS 809.235(1)(b) (2003), *amended by* Or Laws 2005, ch 436, § 1,[1] which provides that a court must order a person's driving privileges revoked either if the person is convicted of felony driving while under the influence of intoxicants (DUII) or "if the person is convicted of misdemeanor driving while under the influence of intoxicants under ORS 813.010 *for a third time*." (Emphasis added.) In this case, defendant pleaded guilty to misdemeanor DUII. It happens to be his *fourth* misdemeanor DUII. The question is whether ORS 809.235(1)(b) requires the court to revoke his driving privileges. The trial court concluded that the statute requires the revocation of defendant's driving privileges. Defendant appeals, contending that the trial court erred in construing the statute. We agree with the trial court and affirm.

The relevant facts are not in dispute. In August 2004, defendant pleaded guilty and was subsequently convicted of DUII when he drove with a blood alcohol content of .27 percent. He had previously been convicted of DUII in 1976 and 1980 in Oregon. He also had been convicted of DUII in 1989 in California.

At sentencing, the state argued that, under ORS 809.235(1)(b), the trial court was required to permanently revoke defendant's driving privileges. Defendant argued that the statute does not apply to him. According to defendant, the statute applies only when a person has been convicted of misdemeanor DUII "for a third time," and this is his fourth such conviction. The trial court agreed with the state and permanently revoked defendant's driving privileges.

---

[1] The statute was amended in 2005. It now reads:

"The court shall order that a person's driving privileges be permanently revoked if the person is convicted of felony driving while under the influence of intoxicants in violation of ORS 813.010 or if the person is convicted of misdemeanor driving while under the influence of intoxicants in violation of ORS 813.010 or its statutory counterpart in any other jurisdiction *for a third or subsequent time*."

ORS 809.235(1)(b) (2005) (emphasis added). Neither party disputes that the current version of the statute does not apply. All references to the statute in this opinion are to the 2003 version of the statute.

On appeal, defendant renews his contention that the statute does not apply because this is his fourth—and not his third—conviction for misdemeanor DUII. According to defendant, the plain meaning of the reference to a "third" means that there must be two, and only two, prior convictions.

In response, the state first contends that defendant's appeal is not justiciable. The state argues that, under ORS 138.050(1), a defendant who has pleaded guilty or no contest may appeal only a limited number of issues pertaining to the lawfulness of a sentence. In this case, the state argues, the trial court's revocation of defendant's driving privileges pursuant to ORS 809.325 is, technically, not part of a "sentence" within the meaning of the statute. We rejected that contention in *State v. Nave*, 214 Or App 324, 327-28, 164 P3d 1219 (2007). We adhere to that holding in this case, as well.

On the merits, the state contends that the trial court was correct in concluding that the statute applies. According to the state, the statute applies when there has been a third conviction, which plausibly could apply either to a defendant who has *only* two prior DUII convictions or to a defendant who has *at least* two such convictions. The state urges the latter construction as the one that the legislature more likely than not intended. In support, the state notes that the legislature employed the indefinite article—"*a* third time"—which ordinarily is taken to be an indefinite determiner with an indefinite reference. The state also notes that defendant's proposed construction would produce the implausible result that a person with a *greater* number of prior DUII convictions would be entitled to a *lesser* penalty. Even assuming that the statute is ambiguous, the state contends, the legislative history makes clear that the interpretation that defendant proposes is not what the legislature intended.

Resolving the parties' dispute requires an application of familiar principles of statutory construction. Familiar as they are, it may be worthwhile to review some of the basics. First, the object of the exercise is to ascertain, if possible, the intention of the legislature. ORS 174.020(1)(a) ("In the construction of a statute, a court shall pursue the intention of the legislature if possible."). Second, the intention of the legislature is ascertained by examining the language of the statute

in three sequential steps described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). At the initial level of the analysis, we are to examine the words of the statute in context to determine whether the disputed provision is "ambiguous," that is, whether the provision is capable of more than one reasonable construction. If it is, we then proceed to the legislative history, and, if the legislative history does not resolve that ambiguity, we resort to relevant canons of construction. *Id.* It is important to emphasize how little it takes to demonstrate that a statute is "ambiguous." As we explained in *Godfrey v. Fred Meyer Stores*, 202 Or App 673, 686, 124 P3d 621 (2005), *rev den*, 340 Or 672 (2006):

> "[T]he threshold of ambiguity is a low one. It does not require that competing constructions be equally tenable. It requires only that a competing construction not be 'wholly implausible.' *Owens v. MVD*, 319 Or 259, 268, 875 P2d 463 (1994)[.]"

With the foregoing principles in mind, we turn to the wording of the statute. ORS 809.235(1)(b) provides:

> "The court shall order that a person's driving privileges be permanently revoked if the person is convicted of felony driving while under the influence of intoxicants under ORS 813.010 or if the person is convicted of misdemeanor driving while under the influence of intoxicants under ORS 813.010 for a third time."

In this case, the question is what the legislature intended by the reference to a person having been convicted of misdemeanor DUII "for a third time." More precisely, the question is—at least initially—whether there is more than one construction of that provision that is not "wholly implausible." *Owens*, 319 Or at 268.

The answer to that question is straightforward. The statute is at least ambiguous. In ordinary speech, references to numeric sequences can mean a variety of things. According to the usual source of ordinary meaning, *Webster's Third New Int'l Dictionary* 2377-78 (unabridged ed 2002), for example, the adjective "third" may refer to "being number three in a countable series," or "being next to the second in place or time," or "being the last in each group of three in a series," among other things. One of those definitions—the middle

one—is consistent with defendant's proposed construction. But the other two are consistent with the state's.

That is not surprising, as the ambiguity of numeric references is a common feature of ordinary speech. To pick a silly example, when you tell your child, "if you do that *one more time*, you are grounded," that admonition does not necessarily mean that grounding will follow one—and only one—offense. To cite another, to tell the child that he or she may have "seconds" does not necessarily mean that the child cannot have a third or fourth helping. The precise meaning of the numeric reference depends on the context in which it is employed.

More to the point, the legislature employs references to ordinal numbers in the same way. For example, ORS 468.939(2) provides that the crime of unlawful air pollution in the first degree is a Class B felony. The statute goes on to say that, "upon a second conviction" of the offense within a five-year period, the court may impose a fine of $200,000 in addition to any other sentence. The statute says nothing about subsequent convictions. It seems clear that the legislature did not intend that the availability of the additional fine to be limited to the second—and only the second—conviction and that, upon a third or fourth conviction within the requisite five-year period, the offense reverts to the lesser sentence, and it does no particular violence to the language to read the statute consistently with that understanding. *See also* ORS 468.946(3) ("Upon a second conviction for unlawful water pollution in the first degree within a five-year period," a court may impose a fine in addition to other allowable sentence.).

So, to return to the wording of ORS 809.235(1)(b), there is nothing in the phrasing of the provision referring to a defendant having been convicted of misdemeanor DUII "for a third time" that necessarily means that the statute applies to a third—and only a third—conviction. Reading the statute to apply to a third *and subsequent* convictions is, in other words, not wholly implausible.

Ambiguity, of course, is not determined by reference to the phrasing of a statute in isolation. *See, e.g., Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997) ("[W]e do not

look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole."). The question then becomes whether there is something in the relevant context of ORS 809.235(1)(b) that renders the foregoing construction untenable as a matter of law, that is, wholly implausible. We find no such impediments in the other relevant provisions of the statute. If anything, resort to other provisions of the statute only serves to muddy the proverbial waters as to precisely what the legislature intended when it referred to a defendant having been convicted of misdemeanor DUII "for a third time."

For example, another provision in the same bill from which the disputed language in this case originated refers to "*the* third" conviction. Or Laws 2003, ch 346, § 1 (emphasis added). Specifically, the portion of the bill that was codified at ORS 813.400(2), pertaining to the authority of the Department of Transportation to revoke driving privileges, provides that "a person convicted of misdemeanor driving while under the influence of intoxicants for the third time[ ] is subject to revocation of driving privileges as provided in ORS 809.235." *Id.* It certainly is true that the use of the definite article often is understood to signify an intention to refer to a specific object, *e.g.*, *Steelman-Duff, Inc. v. Dept. of Transportation*, 323 Or 220, 227, 915 P2d 958 (1996), which would tend to support the notion that, in referring to *the* third conviction, the legislature intended in that case to refer to the third— and only the third—in a sequence.

The problem is that ORS 809.235(1)(b) does not employ the same phrasing. It employs the *indefinite* article "a" in its reference to a person having been convicted "for a third time." Ordinarily, we assume that such differences in statutory phrasing are intentional. *See, e.g., Dept. of Transportation v. Stallcup*, 341 Or 93, 101, 138 P3d 9 (2006) (determining that use of different terms in real estate appraisal statute suggests that each was intended to have a different meaning); *State v. Glaspey*, 337 Or 558, 564-65, 100 P3d 730 (2004) (stating that use of different terms in assault statute—"victim" in one provision and victim's "child" in the other—means that one is not the same as the other). And, more to the point, we ordinarily assume that the use of the

indefinite article, as opposed to the definite article, has legal significance. *See, e.g.*, *Carroll and Murphy*, 186 Or App 59, 68, 61 P3d 964 (2003) (providing that the legislature uses "a," as an indefinite article, to refer to an unidentified, undetermined, or unspecified object and uses "the" to indicate the intention to refer to a definite object).

For another example, there is a second provision of the same bill from which ORS 809.235(1)(b) originated, this one referring to a subsequent conviction without any particular article—definite or indefinite. Or Laws 2003, ch 346, § 4. The effective date provision of the original bill declares that the law applies "to persons whose third conviction of misdemeanor driving while under the influence of intoxicants occurs on or after the effective date" of the enactment. *Id.* To the extent that there are indeed differences between the reference in ORS 813.400(2) to conviction for DUII "for *the* third time," on the one hand, and in ORS 809.235(1)(b) to such conviction "for *a* third time," on the other, it is not at all clear which of the two provisions the effective date provision refers to, as it employs no article one way or the other.

In short, nothing in the context forecloses the state's construction of ORS 809.235(1)(b)—that is, that, in referring to a person having been convicted of misdemeanor DUII "for a third time," the legislature intended the statute to refer to having been convicted *at least* three times. As a result, it is necessary to consult the legislative history to determine which among the competing constructions is the one that the legislature most likely intended.

In our view, resort to the legislative history makes disposition of that question fairly easy. To be sure, there is nothing in the legislative history that speaks directly to the issue of statutory construction that we confront in this case. But the repeated statements as to the purpose of the legislation leave little doubt as to which interpretation the legislature most likely intended. *See, e.g.*, *State v. Shaw*, 338 Or 586, 605-06, 113 P3d 898 (2005) (examining legislative history to determine general purpose of a statute to resolve ambiguity in one of its provisions).

In brief, the legislature repeats—over and over again—that the principal focus of the bill that became the

disputed provision of ORS 809.235(1)(b) was to "crack down" on repeat DUII offenders. Representative Barker, for example, a chief sponsor of the bill, explained that

"I introduced this bill, brought this bill forward, that would revoke driving privileges after a third conviction of driving under the influence. At the present time, it's four convictions. And * * * to keep it really brief, the only objections I've heard about this so far at town halls and so on in meetings with citizens in my district is they can't imagine why we're waiting for the third time, why it isn't done sooner."

Tape Recording, House Committee on Judiciary, HB 2885, Apr 3, 2003, Tape 123, Side A (statement of Rep Jeff Barker).

In the same hearing, a member of Mothers Against Drunk Driving, one of the principal supporters of the bill, explained:

"Most people who get stopped for DUII have driven drunk many times, as has previously been stated, before they are caught. A third conviction for DUII therefore equates to more incidences of driving under the influence than I would like to think about. By the time the driver, the drunk driver, gets a third conviction, that person has established habits and may have already killed or injured someone in a crash. * * * This bill will send a clear signal that we are serious about reducing drinking and driving. In order to change the attitudes about drinking and driving, we must make our laws tougher and continue with educational programs. Second-time offenders need to receive a strong and clear warning about the consequences of their third conviction after we pass this House bill."

*Id.* (statement of Bruce Pratt).

A legislative analyst for the City of Eugene, which also supported the bill, testified that

"[a]nyone who has been convicted of misdemeanor DUII for the third time has demonstrated a callous disregard for the safety of others on the roadway. This bill has the potential to be an additional deterrent to prevent people from driving while under the influence or will, at least, remove from the road those individuals who persist in driving while impaired."

Exhibit E, House Committee on Judiciary, HB 2885, Apr 3, 2003 (letter from Seth T. Karpinski).

A legislative analyst for the governor's advisory committee on DUII also testified in support of the bill, noting that, in 2001, nearly 300 people had been "convicted for the 4th or more times of driving under the influence of intoxicants," of whom only 58 were convicted under the current law. The analyst similarly noted that, in the following year, "266 people were convicted for the 4th time or more," while "143, or approximately only 50 percent, were convicted under the current felony law." Exhibit F, House Committee on Judiciary, HB 2885, Apr 3, 2003 (letter from Gretchen McKenzie).

We could go on, but we think that the gist of the legislative history is clear. In fact, there are tidbits of that history that are tantalizingly close to the issue at hand: Representative Barker refers to the bill as applying "*after* a third conviction," and the representative of the governor's advisory committee actually refers to people who have been convicted "for the 4th time *or more.*" (Emphasis added.) But we need not claim that much from the history. It is sufficient to observe that the purpose of the bill, as reflected in statements such as the ones that we have quoted, is the legislature's concern with increasing penalties for repeat DUII offenders. Taking that purpose into account, it seems plain that the legislature intended the construction of the statute proposed by the state. Indeed, the construction proposed by defendant runs counter to the purpose of the statute as revealed in the foregoing legislative history.

Even assuming that the legislative history is not sufficiently illuminating of the legislature's intentions, all that means is that we resort to canons of construction to resolve the ambiguity. In our view, any number of canons could be called into service, each of which would confirm our conclusions as to the intended meaning of the statute.

For example, the absurd results canon immediately comes to mind. *State v. Vasquez-Rubio*, 323 Or 275, 282-83, 917 P2d 494 (1996). As the state points out, it is difficult to envision a policy that explains why the legislature would

want to impose a less harsh penalty for a greater number of prior DUII convictions.

The canon calling for avoidance of constitutional issues also comes to mind. *State v. Stoneman*, 323 Or 536, 540 n 5, 920 P2d 535 (1996); *State v. Lanig*, 154 Or App 665, 674, 963 P2d 58 (1998). Under that canon, the argument would be that reading the statute as defendant proposes would produce unconstitutionally disproportionate sentences. We do not suggest that such an argument would prevail, but the avoidance canon is commonly invoked when there is even a tenable argument of unconstitutionality. *Westwood Homeowners Assn., Inc. v. Lane County*, 318 Or 146, 160, 864 P2d 350 (1993), *adh'd to as modified on recons*, 318 Or 327, 866 P2d 463 (1994) (rejecting proposed interpretation that "arguably would infringe on the constitutional rights" of parties).

Finally, there is the much-cited canon that, when all else fails, we attempt to do what the legislature most likely would have done had it thought of the specific issue. *Carlson v. Myers*, 327 Or 213, 225, 959 P2d 31 (1998). On that question, there can be no debate. Given the wording of the statute and the repeated statements of general policy that appear in the legislative history, it seems clear that the legislature would favor the interpretation proposed by the state—that a defendant having been convicted of misdemeanor DUII "for a third time" means for *at least* three times.

The dissent insists that defendant is correct and that the wording of ORS 809.235(1)(b) is unambiguous. The dissent complains that, in setting out the relevant standard for determining the existence of an ambiguity, we have "set[ ] the bar too low" by determining that the statute is susceptible to more than one interpretation "based solely on the shades of the dictionary meaning" of the word "third." The dissent argues that we should forbear from examining the legislative history of the statute because its meaning is "plain." 217 Or App at 45 (Sercombe, J., dissenting).

To begin with, the dissent attacks a straw man, as our analysis is based not only on dictionary definitions of the statutory term in a vacuum but also on the manner in which that term is employed in its context, including other portions

of the statute and related statutes. Moreover, and more important, the dissent's insistence that "a stronger case" for ambiguity should be required before examining legislative history recalls a similar argument leveled in *Lipscomb v. State Bd. of Higher Ed.*, 305 Or 472, 484-85, 753 P2d 939 (1988), which the Supreme Court rejected in the following terms:

> "[Defendants] argue that resort to legislative history is improper when the meaning of the text is 'plain' or 'unambiguous.'

> "This and similar formulations are often recited, but in practice they do not and should not confine the court to historically blind exegesis. * * * When one side to a dispute over the meaning of a public law urges a court not to look at or consider materials presented by the other side for its reading of the law, this only invites doubt whether the materials might show that the 'plain meaning' is not so plain after all. That is the case here.

> "In practice, also, courts rarely see disputes over interpretation when the opposing party cannot show a possible alternative reading of the words, which it claims to be correct in context."

(Footnotes omitted.) The court's observations in *Lipscomb* apply with equal force to the arguments in this case.[2]

In asserting that the meaning of ORS 809.235(1)(b) is plain, the dissent places particular reliance on the provisions of other statutes that we have mentioned, one of which

---

[2] In that regard, it is perhaps worth observing that ORS 174.020(1)(b), as amended in 2001, now provides that "to assist a court in its construction of a statute, a party may offer the legislative history of a statute." As we noted in *State v. Rodriguez-Barrera*, 213 Or App 56, 61-62, 159 P3d 1201, *rev den*, 343 Or 224 (2007), it is not clear whether that statute alters the usual constraints on examining legislative history that are required under *PGE*. The cases decided since the statute was amended have not been consistent. In some cases, the Supreme Court has examined legislative history without reference to *PGE* or to the existence of an ambiguity, *e.g.*, *Roberts v. SAIF*, 341 Or 48, 53, 136 P3d 1105 (2006) (commenting that "[a] review of the legislative history confirms * * * the legislature's intent"), while in other cases, the court declined to resort to legislative history because the statute was unambiguous, *e.g.*, *Pacificorp Power Marketing v. Dept. of Rev.*, 340 Or 204, 215, 215-18, 131 P3d 725 (2006) ("If the legislative intent is clear after reviewing the ordinary meaning of the text and context, then no further inquiry is necessary."). We need not resolve that question in this case because we have determined that, at all events, the statute at issue is ambiguous.

refers to a defendant having been convicted of misdemeanor DUII for "*the* third time" and the other of which provides that the relevant portions of ORS 809.235(1)(b) apply to defendants "whose third conviction" occurs after the effective date of the enactment. The dissent insists that those other provisions remove all doubt that, when the legislature said in ORS 809.235(1)(b) that revocation of driving privileges is required when a defendant has been convicted of misdemeanor DUII "for *a* third time," what the legislature really meant was "for *the* third time." 217 Or App at 43 (Sercombe, J., dissenting). As we have already explained, however, at the very least, the differences in phrasing between the statutes suggest some doubt about what the legislature really intended.

The dissent also emphasizes the fact that other statutes pertaining to DUII employ the phrase "third or subsequent conviction," *e.g.*, ORS 813.010(6)(c), thereby giving rise to an inference that the legislature knows how to say that when it so intends. 217 Or App at 43-45 (Sercombe, J., dissenting). There is no question but that there are such examples in the DUII statutes. As we have noted, however, there are also examples in other statutes in which the legislature has employed phrasing similar to that used in ORS 809.235(1)(b) plainly to refer to a particular *or subsequent* conviction. Aside from that, although the bare fact that the legislature has used such phrasing *permits an inference* that its failure to do so in ORS 809.235(1)(b) is significant, it is another thing to suggest that it *demonstrates conclusively* that a contrary interpretation is wholly implausible. *See, e.g., State v. Robison*, 202 Or App 237, 242, 120 P3d 1285 (2005) (The fact that the legislature employed certain phrasing in one statute, but not another, permits an inference that the omission was intentional, "[b]ut we cannot say that the text speaks conclusively in that regard.").

We conclude that the phrasing of ORS 809.235(1)(b) is ambiguous but that resort to legislative history and other aids to construction make clear that the trial court did not err in interpreting the statute to require permanent revocation of defendant's driving privileges based on his three prior misdemeanor DUII convictions.

Affirmed.

**SERCOMBE, J.,** dissenting.

The majority's construction of Oregon Laws 2003, chapter 346, robs the statute of its plain meaning through the guise of creating ambiguity from wordplay. The license revocation sanction only applies to a person "whose third [DUII misdemeanor] conviction * * * occurs on or after" January 1, 2004. Or Laws 2003, ch 346, § 4. The majority reads this limitation to include the exact opposite—that the sanction applies to a person whose third DUII misdemeanor conviction occurs *before* January 1, 2004. That result is reached through a misapplication of the statutory construction principles set out in *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-12, 859 P2d 1143 (1993). The majority ventures into legislative history of the statute and canons of statutory construction to conclude that the legislature intended a statutory meaning that is completely at odds with the text and context of the enactment. Because that journey is forbidden by the *PGE* principles, because the proper course compels a different result, and because the legislative intent analysis used by the majority usurps the constitutional prerogative of the legislature, I respectfully dissent.

The substantive questions presented are what "for a third time" means in ORS 809.235(1)(b), as amended by Oregon Laws 2003, chapter 346, section 1, and whether defendant is a person "whose third [DUII misdemeanor] conviction * * * occurs on or after" January 1, 2004, under Oregon Laws 2003, chapter 346, section 4. Before January 1, 2004, the sanction for a third misdemeanor DUII conviction was, at most, a three-year suspension of driving privileges. ORS 813.400(1) (2001), *amended by* Or Laws 2003, ch 346, § 1; *former* ORS 809.420(2)(c) (2001), *renumbered as* ORS 809.428 (2003). At that time, ORS 809.235(1)(b) (2001) required a court to order revocation of a person's driver's license only on conviction of a felony DUII. Under ORS 813.010(5), a felony DUII occurred when a defendant had been convicted of DUII at least three times in the 10 years before the current offense.[1] Thus, before 2004, only certain

---

[1] ORS 813.010(5) defined the Class C felony offense of DUII as follows:

"Driving while under the influence of intoxicants is a Class C felony if the defendant has been convicted of driving while under the influence of

fourth or greater in number DUII convictions resulted in a revocation of driving privileges, those that occurred within a 10-year period of time.

The 2003 Legislative Assembly adopted House Bill (HB) 2885 and added an additional occasion where a DUII conviction resulted in the permanent loss of driving privileges. Or Laws 2003, ch 346. The law amended ORS 809.235(1)(b) by adding the italicized text:

"The court shall order that a person's driving privileges be permanently revoked if the person is convicted of felony driving while under the influence of intoxicants under ORS 813.010 *or if the person is convicted of misdemeanor driving while under the influence of intoxicants under ORS 813.010 for a third time.*"[2]

The law enacted two other relevant provisions. Section 1 of HB 2885 amended ORS 813.400(2), relating to suspension and revocation of driving privileges by the Department of Transportation, by adding the italicized text:

"A person convicted of felony driving while under the influence of intoxicants, *or a person convicted of misdemeanor driving while under the influence of intoxicants for the third time,* is subject to revocation of driving privileges as provided in ORS 809.235."

Or Laws 2003, ch 346, § 1.

Finally, a second related provision of the law set out the class of persons to whom the changes of law applied:

"The amendments to ORS 809.235, 811.182 and 813.400 by sections 1 to 3 of this 2003 Act apply to persons whose third conviction of misdemeanor driving while under the

_____

intoxicants in violation of this section or its statutory counterpart in another jurisdiction at least three times in the 10 years prior to the date of the current offense and the current offense was committed in a motor vehicle."

[2] ORS 809.235(1)(b) was amended in 2005 in two respects, Or Laws 2005, ch 436, § 1, neither of which is relevant to this appeal. In its current version, the statute reads, in part, as follows:

"The court shall order that a person's driving privileges be permanently revoked * * * if the person is convicted of misdemeanor driving while under the influence of intoxicants in violation of ORS 813.010 or its statutory counterpart in any other jurisdiction *for a third or subsequent time.*"

(Emphasis added.)

influence of intoxicants occurs on or after the effective date of this 2003 Act [January 1, 2004]."

Or Laws 2003, ch 346, § 4.

Thus, the 2003 law required a license revocation order on conviction of a DUII misdemeanor "for a third time," restated the occasion of that penalty as one when the DUII conviction is "for the third time," and applied that new penalty only to persons "whose third [DUII] conviction * * * occurs on or after" January 1, 2004. The issues in this appeal are the meaning of "for a third time" as used in the 2003 amendment to ORS 809.235(1)(b) and the related question of the meaning of "persons whose third conviction * * * occurs on or after [January 1, 2004]."

We determine the meaning of statutes by applying the statutory construction framework set out in *PGE*, 317 Or at 610-12. *PGE* requires a court, in construing a statute, to "discern the intent of the legislature" from the statute's text and context. At that first level of analysis, "the court considers rules of construction of the statutory text that bear directly on how to read the text." *Id.* at 611. If the legislature's intent is evident from that examination, "further inquiry is unnecessary." *Id.* If the intent is not clear, "the court will then move to the second level, which is to consider legislative history to inform the court's inquiry into legislative intent." *Id.* at 611-12. "If, after consideration of text, context, and legislative history, the intent of the legislature remains unclear, then the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id.* at 612.

I differ from the majority, not in the exposition of the familiar *PGE* formula, but in its application to resolve the statutory construction questions raised in this appeal. In my view, the meaning of "third time" and "third conviction" can be determined from the text and context of the statute. Therefore, the court should confine its inquiry to the first level of the *PGE* analysis. In *Bridgeview Vineyards, Inc. v. State Land Board*, 211 Or App 251, 262, 154 P3d 734 (2007), we described the "first level" of the *PGE* analysis as follows:

> "At the first level of analysis, we do not consider the text in isolation; rather we employ rules of textual construction that bear directly on how to read the text, and we are careful to consider the text in context. Context includes 'other provisions of the same statute and other related statutes.' *PGE*, 317 Or at 611."

The majority construes the phrase "convicted * * * for a third time" in ORS 809.235(1)(b) as ambiguous, in that it could refer to more than one occasion of conviction. In the majority's view, a "third time" conviction could occur any number of times, when a person is convicted "for a third time," "for a fourth time," "for a fifth time," and so on. According to the majority, the phrase refers to any one of *several* convictions. It reaches that conclusion because: "a third time" could plausibly mean one of any number of convictions; the legislative history is not inconsistent with that meaning of the phrase; and the majority's interpretation of the statute better effectuates a sound public policy about drunk drivers.

I differ with the majority because I do not believe that the phrase can reasonably be construed to refer to more than one particular conviction. In my view, a person can only be "convicted * * * for a third time" once. That understanding of the phrase, to refer to a particular conviction in time, is based on its plain meaning and other portions of the 2003 amendments that refer to that same conviction as a single conviction in time—as being "convicted * * * for the third time" and as the "third conviction" that "occurs on or after" a particular time. The law does not refer to a conviction for "any third time" or the "third convictions" that occur after January 1, 2004. It describes a particular conviction that occurs during a person's lifetime, the third conviction in time. To read the statute differently—*i.e.*, to cover any number of convictions—distorts its plain meaning.

The words "third time" in ORS 809.235(1)(b) are not defined by statute. Commonly, "third" is a derivative of the root, three, and denotes something that is "being number three in a countable series," "being next to the second in place or time," and "ranking next to the second of a grade or degree in authority or precedence." *Webster's Third New Int'l Dictionary* 2377-78 (unabridged ed 2002).

The majority asserts that, of those definitions of "third," the "middle one" is "consistent with defendant's proposed construction. But the other two are consistent with the state's." 217 Or App at 29. The statutory interpretation issue, however, is not the abstract meaning of "third." It is the meaning of "third time." The obvious meaning of "third *time*" is "being next to the second *in* place or *time*." In that context, "third time" does not mean "being number three in a countable series" or "ranking next to the second of a grade or degree in authority or precedence."

The ordinary meaning of "third time," as it refers here to the "third conviction," is the third conviction in time. A person's fourth marriage to a different person would not qualify that person as being married for "a third time." "Third base" is the base that must be touched third by a runner in baseball. No one would call home plate the "third base" because you could begin counting at first base. If you tell your child that she may have a "second" cookie, it does not invite a third, fourth, or fifth helping.

I disagree with the premise of the majority that, "[i]n ordinary speech, references to numeric sequences can mean a variety of things." 217 Or App at 28. A reference to a *particular* count in a numeric sequence always means the count from the beginning. "The third number" in a sequence is always a single number, the third from the beginning of the sequence. It is only when the reference refers to *more than one point in the sequence* that "third" pertains to more than one number, such as "every third number." In ordinary speech, then, a single reference to the "third conviction" of a person or a conviction for "a third time" means the conviction that follows the first and second convictions in time.

That likely meaning is confirmed by the context of the statute. The first contextual guidance to the meaning of ORS 809.235(1)(b) comes from Oregon Laws 2003, chapter 346, section 4. That part of the law sets out the applicability of the changes in consequences of a "third time" DUII conviction. It states that the changes to ORS 809.235 "apply to persons whose third conviction of misdemeanor driving while under the influence of intoxicants occurs on or after [January 1, 2004]."

That provision presumably establishes that the new sanction could be applied to conduct before the effective date of the law that results in a conviction afterwards and not just to convictions arising from conduct occurring after January 1, 2004. That presumed intent could be implemented by the stated application of the changes to ORS 809.235 to "persons whose *conviction* of misdemeanor driving while under the influence of intoxicants occurs on or after [January 1, 2004]." (Emphasis added.) There is no need to refer to "third conviction" at all to make the law applicable to conduct undertaken before the law's effective date. Instead, the law could have referenced any "conviction."

The use of "*third* conviction," rather than "conviction," reveals an additional and more particular intent, an intent to limit the application of the law based on the timing of the "third conviction." Section 4 of HB 2885 precludes the application of ORS 809.235 to a person whose third conviction occurred *before* January 1, 2004, and allows that application to a person whose third conviction occurred *after* that time. The phrase "persons whose third conviction * * * occurs on or after [January 1, 2004]" is particular and determinate. It refers to a single, particular conviction in time. It is not the same as "persons whose fourth conviction" occurs at that time. The only reasonable construction of the phrase is to refer to the third-in-time conviction. The intent of section 4 of the law is to confirm the intended effect of the change to ORS 809.235(1)(b), to fortify the intent that "for a third time" means the third-in-time conviction.

The state's strongest argument that "for a third time" means the third conviction in any sequence of convictions focuses on the use of the indefinite article "a" in the phrase. The use of "a" implies that "third time" is not particular or specific and could be a third time in the sequence of any two previous convictions. In my view, that argument is weak. "A third time" conviction still connotes a specific conviction. If the intent was to refer to more than one conviction, the phrase would be "for any third time" or "for each third time."

We know that "for a third time" as used in ORS 809.235(1)(b) refers to a single conviction because a companion change to ORS 813.400(2), adopted in Oregon Laws 2003,

chapter 346, section 1, specifies the conviction to be one for "*the* third time * * * *as provided in ORS 809.235.*"[3] (Emphases added.) The same "third time" is intended in both parts of the enactment.

The use of the phrase "for *the* third time" in the changes to ORS 813.400(2), and its equation to the intended meaning of "for *a* third time" as "provided in ORS 809.235(1)(b)," undercuts the force of the state's argument that relies on the use of the word "a" in ORS 809.235(1)(b). "The" is defined, in part:

> "**2 a** (1)   used as a function word with a noun modified by an adjective or by an attributive noun to limit the application of the modified noun * * * **c**—used as a function word before a noun to limit its application to that specified by a succeeding element in the sentence, esp. a subordinate clause, prepositional phrase, or infinitive phrase[.]"

*Webster's* at 2368-69.

The word "the" in "the third time" in ORS 813.400(2) limits the "time" to the "third time"—a specific and particular conviction. Under the terms of the statute, conviction for "the third time" under ORS 813.400(2) *is the same thing* as conviction for "a third time" under ORS 809.235(1)(b) ("the third time * * * *as provided in ORS 809.235*"). In both cases, the conviction is a particular one, the third conviction in time.

The context, however, that most illuminates the meaning of "third time" and "third conviction" comes from the text of related statutes on DUII sanctions and the regulation of driving privileges. In every other circumstance in ORS chapters 809 and 813, relating to suspension and revocation of driving privileges or the DUII offense, the legislative intent to attach consequences to the second or third "or subsequent" DUII conviction is stated in just those words or in similar fashion. Those statutes relate to the same general subjects as ORS 809.235(1)(b) and are part of its context. *See*

---

[3] *See Carroll and Murphy*, 186 Or App 59, 68, 61 P3d 964 (2003) (using "a" as an indefinite article to distinguish an unidentified, undetermined, or unspecified noun and use of "the" indicates the intention to refer to a definite noun, rather than any unspecified noun); *Steelman-Duff, Inc. v. Dept. of Transportation*, 323 Or 220, 227, 915 P2d 958 (1996) (identifying "a" as an indefinite article and "the" as a definite article).

ORS 813.010(6)(c) (attaching a $2,000 minimum fine to a person's "third or subsequent conviction" for a DUII); ORS 809.010(1)(b) (requiring suspension of vehicle registration on a "second or subsequent charge of driving while under the influence of intoxicants"); ORS 813.010(5) (authorizing felony DUII conviction if defendant convicted of DUII "at least three times in the 10 years prior to the date of the current offense"); ORS 809.700(1)(b) (allowing a court to impound or immobilize a motor vehicle based on a conviction for a "second or subsequent" charge of DUII in violation of ORS 813.010).[4] In that context, the legislature's failure to describe the ambit of ORS 809.235(1)(b) as applying to "a third or subsequent conviction," rather than applying to a conviction "for a third time," can only be assumed to be a distinguishing and intentional choice.[5]

---

[4] *See also* ORS 809.120(1)(b) (allowing a court to recommend suspension of driving privileges of a "second or subsequent" violation of ORS 818.040 relating to weight limitations); ORS 809.280(7)(b) (imposing a one-year suspension by the Department of Transportation on receipt of a "second or subsequent" order denying driving privileges for a convicted juvenile under ORS 809.260); ORS 809.407(2)(c) (one-year suspension of commercial driver's license for railroad crossing violations if a "third or subsequent" offense occurs within three years of two or more convictions for separate offenses); ORS 809.413(6)(b) (imposing a 120-day suspension for a "third or subsequent" conviction of a serious traffic violation if convictions arose out of separate incidents within three years); ORS 809.428(1)(c) (imposing a three-year suspension under Schedule I for a "third or subsequent offense" where the present offense plus two convictions for separate offenses occurs within five years); ORS 809.428(2)(c) (imposing a three-year suspension for a "third or subsequent" offense where that offense and a conviction for a separate offense occurs within a five-year period); ORS 809.600(1) (revoking driving privileges for habitual offenders when a person is convicted of "three or more" listed offenses within five years); ORS 809.600(2) (revoking driving privileges for habitual offenders who are convicted of "20 or more" listed offenses within a five-year period).

[5] The majority incorrectly asserts that "the legislature employs references to ordinal numbers" in any number of ways. 217 Or App at 29. I am not aware of, nor does the majority point to, any instance where the bare statutory reference to a "first," "second," or "third" occurrence means the "first or more," "second or subsequent," or "third or greater number" occurrence. The majority notes the references to the enhanced fines for a "second conviction" in ORS 468.939(3) (crime of unlawful air pollution in first degree) and ORS 468.946(3) (crime of unlawful water pollution in first degree) to not limit the additional fine to "the second—and only the second—conviction." 217 Or App at 29. The enhanced penalty in both statutes applies to "a second conviction * * * within a five year period." The plain reading of the statutes is to augment the penalty for a second or greater in number conviction in time, but only if the conviction occurs within five years of an earlier conviction. That enhancement would occur whether or not predicate convictions existed before the five-year period. The "second conviction" could be the third conviction in time. But those statutes do not state or imply that the phrase "second conviction"

All of those contextual clues—the text of companion enactments to ORS 809.235(1)(b) and the use of "third or subsequent" to describe a different effect in a number of related statutes—point to a clear conclusion: a person is convicted of a misdemeanor DUII "for a third time" under ORS 809.235(1)(b) when the conviction is the third conviction during the lifetime of the defendant, no more and no less.[6] Because the meaning of the statute is clear from its text and context, there is no need to resort to legislative history to inform the analysis. *See State v. Rodriguez-Barrera*, 213 Or App 56, 62, 159 P3d 1201, *rev den*, 343 Or 224 (2007) ("If the wording of a statute is truly capable of one, and only one, reasonable construction then, whatever the legislative history may show, it cannot alter the unambiguous meaning of a statute.").

Nonetheless, and based solely on the shades of the dictionary meaning of "third," the majority jumps into this second level of the *PGE* analysis. I believe that the majority sets the bar too low. Relying on *Owens v. MVD*, 319 Or 259, 268, 875 P2d 463 (1994), and *Godfrey v. Fred Meyer Stores*, 202 Or App 673, 687, 124 P2d 621 (2005), *rev den*, 340 Or 672 (2006), the majority contends that reading "third time" to mean "fourth time" and "third conviction [that] * * * occurs on or after [January 1, 2004]" to mean "third conviction [that] * * * occurs before [January 1, 2004]" is not "wholly implausible." The majority reasons that, because "third" can sometimes mean any third in a series, the "third conviction" as used in ORS 809.235(1)(b) could mean something different than the third-in-time conviction. Therefore, the majority looks to legislative history and beyond to determine legislative intent.

---

includes the third, fourth, or any greater in number conviction by the mere use of the word "second," the proposition advanced by the majority in this case.

[6] The contextual analysis of the meaning of ORS 809.235(1)(b) is particular to its statutory setting and cases from other jurisdictions are of limited guidance. That guidance, however, supports my reading of ORS 809.235(1)(b). In *Calhoun v. State,* 46 Md App 478, 418 A2d 1241 (1980), *aff'd*, 290 Md 1, 425 A2d 1361 (1981), the Maryland Court of Special Appeals held that, where a statute prescribed an enhanced penalty for a "third" conviction, as opposed to a "second or subsequent conviction," the law allowed the penalty only for the one conviction that constituted the third conviction and not on any conviction beyond the second. There, as here, the drafting of the statute was "patently inartful" but capable of only one interpretation. *Id*. at 489-90, 418 A2d at 1249.

A stronger case is needed to classify the majority's construction of "convicted * * * for a third time" as not "wholly implausible" than the vagaries of the dictionary definition of "third." As the court noted in *Steele v. Employment Department*, 143 Or App 105, 113-14, 923 P2d 1252 (1996), *aff'd*, 328 Or 292, 974 P2d 207 (1999):

> "[M]any of the words in our language have several meanings or shades of meaning. However, it does not follow from the fact that there are several variations of how a word is defined in the dictionary that all of the variations are pertinent whenever the word is used, or that each variation is an arguably plausible description of what the word means as it is used in a particular statute. The subject and purpose of the statute, together with the statutory language that surrounds the word in question, narrow the array of definitional choices that dictionaries alone afford and go far in identifying the intended meaning of the word as used in the statute."

Similarly, we observed in *DLCD v. Yamhill County*, 151 Or App 367, 372-73, 949 P2d 1245 (1997):

> "[T]he linguistic tenability of a proffered interpretation of a statutory term does not make the interpretation 'plausible' if a different interpretation that is also linguistically supportable is decisively more consistent with the sense and purpose of the statute and its surrounding language."

The actual text of ORS 809.235(1)(b), its "surrounding language" in Oregon Laws 2003, chapter 346, and every other statutory sanction for a DUII offense in ORS chapter 809 point to a certain conclusion that the license revocation sanction applies to only the third conviction in time. If resort to the second and third levels of the *PGE* analysis is excused here, because "third" can arguably refer to more than one thing in other contexts, then almost every statute can be dissected by a clever linguist to produce some uncertainty of meaning and, thus, to allow inquiry into legislative history. The statutory construction analysis then becomes much less rigorous. Many meanings of a statute can be ascribed to legislative testimony or discovered through canons of construction that often amount to after-the-fact rationales for a judicially preferred policy. The risk of judicial amendment of a

statute becomes more acute when any uncertainty of meaning justifies application of the second and third tiers of the *PGE* formula. Instead, that justification should depend on the existence of multiple constructions of the statutory text that are consistent with the sense and purpose of the statute and its surrounding language. That test is not met here.

Even assuming, for the sake of argument, that examination of the legislative history of ORS 809.235(1)(b) is justifiable, it has limited relevance in this case. Where one construction of a statute is likely, given its text and context, and another is merely plausible, the likely meaning should be preferred by a court unless the legislative history of the statute clearly shows that the merely plausible meaning was intended. Assuming that the majority's construction of ORS 809.235(1)(b) is plausible because it is consistent with the sense and purpose of the statute and its surrounding language, the legislative history of the statute does not vindicate that construction. The majority admits that "there is nothing in the legislative history that speaks directly to the specific issue of statutory construction that we confront in this case." 217 Or App at 31. The obvious legislative intent to increase the penalties for certain DUII repeat offenders and to remove those offenders from the roadways earlier in time is implemented no matter how ORS 809.235(1)(b) is construed. It is speculative to infer any more specific intent and to formulate the meaning of ORS 809.235(1)(b) based on that conjecture. Because the legislative history does not particularly support the majority's construction of ORS 809.235(1)(b), the statute should be construed to effectuate its likely meaning—that the "third time" conviction occurring "on or after" January 1, 2004, is the third in time conviction occurring on or after that date.

The majority errs in further proceeding to the third level of the *PGE* analysis. Unless the legislative history sheds doubt on the likely meaning of a statute, an alternative meaning that is merely plausible should not be advanced through application of canons of judicial construction. The canons may be useful to resolve uncertainty among competing constructions of a statute that are merely plausible, but not to overcome the likely meaning of a statute.

I do not view the classification made by the legislature in ORS 809.235(1)(b) as absurd or suggestive of constitutional difficulty. The 2003 law does not apply to persons with three or more DUII convictions prior to January 1, 2004, because a four-time offender is likely covered by the preexisting DUII felony license revocation penalty. The 2003 law expressly kept the DUII felony license revocation penalty in place. The retention of the preexisting consequences for a DUII felony, a license revocation for only certain four or greater DUII convictions that are proximate in time, perpetuates the policies implemented by the preexisting DUII felony law. As time goes on, permanent revocation of driving privileges for all new third-time offenders would reduce the opportunity to apply the sanction to persons with four or more DUII convictions.

Admittedly, it would have been cleaner had the legislature also imposed the sanction for those four or greater in number DUII conviction offenders who do not qualify as felony offenders. But the retention of the DUII felony text in ORS 809.235(1)(b) and the addition of language referencing only particular third-time convictions plainly express a narrower legislative intent. I see no reason to construe the statute differently than its likely meaning simply because a different construction can be barely squeezed from the words of the statute, and the application of the statute as so construed would be more tidy or harsher to DUII offenders or would better suit the preference of the majority of this court.

Wollheim, J., joins in this dissent.