Argued and submitted August 7, 2020, affirmed March 16, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MARCUS JASON JACKSON,
*Defendant-Appellant.*

Milwaukie Municipal Court
EU034385; A170358

507 P3d 727

Defendant appeals a judgment of the City of Milwaukie Municipal Court upholding his citation for driving over the speed limit. He contends that the municipal court erred in denying his motion to dismiss the citation pursuant to ORS 810.420(2), because there was no evidence that the officer issuing the citation had "taken and passed" a training course in the use of the specific make and model of radar device that the officer used to measure defendant's speed. *Held*: Based on the text and legislative history of ORS 810.420(2), the court did not err in interpreting the statute to require that the officer be trained in the type of speed measuring device used—be it radar, lidar, or something else—and not necessarily the specific make or model of that device. Because the record contains evidence that the officer "went through" a training program regarding the use of radar, and he was on duty as a patrol and traffic supervisor using a radar device to enforce the motor vehicle laws when he cited defendant, the court did not err in denying defendant's motion to dismiss.

Affirmed.

Kimberly M. Graves, Judge.

Blake Dore argued the cause for appellant. Also on the brief was Dore Law Firm, LLC.

Dashiell L. Farewell, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Mooney, Presiding Judge, and Pagán, Judge, and DeHoog, Judge pro tempore.*

DeHOOG, J. pro tempore.

Affirmed.

_____

* Pagán, J., *vice* DeVore, S. J.

## DeHOOG, J. pro tempore

Using a radar speed measuring device, a police officer clocked defendant driving over the speed limit and cited him for violating ORS 811.111.[1] Defendant pleaded not guilty and went to trial in the City of Milwaukie Municipal Court. The municipal court upheld the citation and entered a judgment imposing a fine of $265. Defendant appeals that judgment, ORS 138.057, assigning error to the court's denial of his motion to dismiss the citation based on ORS 810.420(2). That statute provides:

> "A police officer may not issue a citation based on a speed measuring device unless the officer has taken and passed a training course, approved by the law enforcement agency that employs the officer, in the use of the speed measuring device."

For the reasons that follow, we affirm.

The parties do not dispute the pertinent facts, which are few. In October 2018, Sergeant Marl, "a patrol supervisor and the traffic supervisor" with the Milwaukie Police Department, observed defendant driving 54 miles per hour in a 30 mile-per-hour speed zone. Marl measured defendant's speed using a "Decatur Genesis" model handheld radar device. Based on that reading, Marl issued defendant a traffic citation for violating the posted speed limit. Defendant entered a not guilty plea and the case went to trial.

Marl was the state's only witness at trial. He testified that, after completing the police academy in 1995, he "went through a second radar-specific course in 2001," which included training in the use of radar and lidar.[2] The training course was hosted by the City of Tigard and approved by

---

[1] ORS 811.111(1)(d) provides, in part, that a person commits the offense of violating a speed limit if the person, "[e]xcept as otherwise provided in this section, drives a vehicle upon a highway at a speed greater than a speed posted by authority granted under ORS 810.180." The statute has been amended since defendant was cited in this case; however, because those amendments do not affect our analysis, we cite the current version here.

[2] Although the words radar and lidar are capitalized in various ways in the transcript, those words do not need capitalization. *See State v. Branch*, 243 Or App 309, 311 n 1, 259 P3d 103, *rev den*, 351 Or 216 (2011) (so noting). We have modified the capitalization accordingly when quoting from the transcript.

the Department of Public Safety Standards and Training. Marl testified that he did not remember whether the training course had specifically used a Decatur Genesis brand or model of speed measurement device, but he "d[idn't] believe so." As to defendant's alleged violation, he testified that he had tested the radar device according to his training before going on patrol that morning and again at the end of his shift, and that it had been working properly.

Following Marl's testimony, defendant moved to dismiss "under" ORS 810.420(2) based on the state's purported failure to establish "that [Marl had] passed that training course, or that the training course was in the speed measuring device that he used in this particular case."[3] The municipal court denied defendant's motion, stating:

> "I've heard the motion before, and my belief continues to be that it is not as specifically construed as you would argue that it is, were they trained in the used [*sic*] of a radar unit, the technology in which they're using, or a lidar unit, the technology, not the specific manufacturer's device.
>
> "And so with regard to the taken and passed, I understand that the specific wording was not used. Though, with the Sergeant here using the equipment, I think it's the appropriate conclusion that the officer passed the training course that he participated in."

After closing arguments, the court concluded that the state had established the *prima facie* elements of the alleged offense, found defendant guilty, and entered a judgment fining him $265. Defendant now appeals.

Defendant argues on appeal that the trial court erred in denying his motion to dismiss, because the state failed to establish the "conditions precedent" to the issuance of the citation, namely (1) that Marl had taken a training course in the specific speed measuring device that he had

---

[3] Defense counsel argued, in part:

"[T]his goes beyond just the issue of statutory construction, but instead there also is the point that Sergeant Marl testified that he went to the radar course, but there's no testimony that he passed the radar course.

"The statute is very clear that the officer has to take and pass the training course. That has to be here in the record, and it's not in this particular case."

used—a Decatur Genesis model radar device—and (2) that he had passed the course. The state disputes both points. The state first asserts that the municipal court correctly interpreted ORS 810.420(2) as requiring that an officer be trained on the *type* of speed measuring device used—here, radar, as opposed to lidar or another technology—not the particular make and model of the device. Second, the state contends that the trial court could properly infer from the evidence presented—specifically, that Marl "went through" the training course and was then permitted by the police department to use the device—that he had passed the course.

Before considering those arguments, we pause to address the procedural posture of this case. As we have explained with regard to a closely related statute, the conditions set out in ORS 810.420 are "conditions precedent for the issuance of a citation" using speed measurement devices as a means of detecting violations of ORS 811.111; they are not "substantive requirements for the commission of the offense itself."[4] *See State v. King*, 199 Or App 278, 284, 111 P3d 1146, *rev den*, 339 Or 544 (2005) (construing ORS 810.439, which provides for the use of photo radar as a means of detecting violations of *former* ORS 811.123 (2001), *repealed by* Or Laws 2003, ch 819, §§ 19, 21). As a result, the proper time for a defendant to raise the state's failure to establish those conditions precedent "is in a pretrial motion aimed at the efficacy of the charging instrument." *Id.* at 285. *Accord State v. Daly*, 275 Or App 1012, 1017, 365 P3d 1177 (2015) (holding that trial court erred in concluding that the defendant's pretrial motion to dismiss challenging a

---

[4] ORS 810.420 provides in full:

"(1) When the speed of a vehicle has been checked by a speed measuring device, the driver of the vehicle may be stopped, detained and issued a citation by a police officer if the officer is in uniform and has either:

"(a) Observed the recording of the speed of the vehicle by the device; or

"(b) Probable cause to detain based upon a description of the vehicle or other information received from the officer who has observed the speed of the vehicle recorded.

"(2) A police officer may not issue a citation based on a speed measuring device unless the officer has taken and passed a training course, approved by the law enforcement agency that employs the officer, in the use of the speed measuring device."

condition precedent to the issuance of a citation under ORS 810.439 was premature).

Here, defendant did not comport with that procedure and instead moved to dismiss the citation after the state presented its evidence at trial. However, it is apparent that the parties and the municipal court all understood defendant's motion to challenge whether the state had satisfied the conditions required by ORS 810.420(2), and not the state's failure to establish the elements of the offense itself; as a result, the question was fully litigated at trial. Moreover, the state does not contend that it was prejudiced by defendant's failure to address the issue pretrial. We therefore proceed to consider defendant's challenge to the trial court's denial of his motion to dismiss. *See generally Daly*, 275 Or App at 1017 (concluding that the defendant had not been prejudiced by trial court's erroneous conclusion that his pretrial motion to dismiss was premature, where defendant had had opportunity to litigate the same motion at trial).

Turning to the merits, the meaning of ORS 810.420(2) presents an issue of statutory construction that we review for legal error, *State v. Robinson*, 288 Or App 194, 198, 406 P3d 200 (2017), using the methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). Thus, we examine the text of the statute, in context, along with any useful legislative history and, where appropriate, canons of construction. Our objective is to determine the meaning most likely intended by the enacting legislature. *Robinson*, 288 Or App at 199.

Beginning with the pertinent text, we again set out ORS 810.420(2), which provides:

> "A police officer may not issue a citation based on *a* speed measuring device unless the officer has taken and passed a training course * * * in the use of *the* speed measuring device."

(Emphases added.) Relying on the statute's use of the indefinite and definite articles "a" and "the," defendant argues that the issuing officer must be trained in the use of the

specific make and model of speed measuring device that the officer used to detect the driver's speed. He contends that, by using the indefinite article "a" to describe the speed measuring device in the first part of the sentence, followed by the definite article "the" preceding "speed measuring device" in the latter part of the sentence, the legislature signaled its intent to require that the speed measuring device that an officer actually uses be of the same make and model as the device on which the officer was trained. As defendant reads the text, "the" speed measuring device referenced in the second part of the statute necessarily corresponds with the speed measuring device referenced in the first part—which, according to defendant, is the *actual* speed measuring device that was used—here, a Genesis Decatur radar device. Thus, at least in defendant's view, the state was required to establish that Marl took and passed a training course regarding that specific radar device.

Although defendant's reading of ORS 810.420(2) is plausible, we are not persuaded that his is the only plausible reading. We agree that there is a correlation between "the" device specified in the second part of the sentence and "a" speed measuring device in the first part. *State v. Rodriguez*, 217 Or App 24, 30-31, 175 P3d 471 (2007) (citing *Carroll and Murphy*, 186 Or App 59, 68, 61 P3d 964 (2003) for the proposition that the legislature generally uses the indefinite article "a" to refer to an unidentified, undetermined, or unspecified object and uses the definite article "the" to indicate its contemplation of a definite object). It is also true that "the use of the definite article can signify a narrowing intent." *Wyers v. American Medical Response Northwest, Inc.*, 360 Or 211, 224, 377 P3d 570 (2016); *see also Rodriguez*, 217 Or App at 30 (noting that "the use of the definite article often is understood to signify an intention to refer to a specific object").

However, that does not compel the construction defendant urges. That is, the definite article "the" in the second clause *could* be read to narrow the training requirement to the *particular* make and model of speed measuring device used by the officer in citing the motorist, as defendant contends. However, it could also—as the state posits—be

understood to narrow the reference to the *type* of speed measuring device—for example, radar or lidar—used by the officer.[5] *See Wyers*, 360 Or at 223-24 ("On the one hand, the use of the definite article 'the' in reference to 'physical or financial abuse' could refer to the specific incident or incidents of abuse that the defendant allegedly has permitted another to commit against the plaintiff or plaintiffs. On the other hand, it could refer more generally to the *type* of abuse that the defendant has permitted another to commit, whether against the plaintiff or against another vulnerable person." (Emphasis in original.)). In other words, the plain text of the statute does not require the level of specificity that defendant urges us to adopt. And, given that the legislature did not express that requirement in its chosen text, we must be cautious in finding that such a requirement is implied. *See* ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]").

The context of ORS 810.420(2) provides no further clues as to its meaning, so we turn to the legislative history of that provision. On balance, that history also supports a broader reading of the statute, that is, a reading that does not require the state to establish that an officer was trained on the specific make and model of speed measurement device that the officer used in issuing a particular citation.

As introduced, Senate Bill (SB) 153 (2001) required the Oregon State Police (OSP) to develop a training program for the use of speed measuring devices and included an undetermined general fund appropriation for that purpose. It also amended ORS 810.420 to add a new subsection (2), which provided, "A police officer may not issue a citation based on a speed measuring device unless the officer has had _____ hours of training in the use of the device" in the program developed by OSP. At the first public hearing on the bill, the Senate General Government and Transportation Committee considered and adopted the amended "-1" version of the introduced bill. The -1 amendments deleted the

---

[5] The case law defendant cites in support of his position is unpersuasive for similar reasons.

requirement that OSP develop a training program and the associated appropriation, and, by, among other things, eliminating the minimum hour requirement, amended ORS 810.420(2) to reflect the present text (set out above, 318 Or App at 371). *Compare* SB 153 (2001), *with id.* (A-Engrossed).

Senator Fisher, the bill's sponsor, testified that he had introduced the bill to address a concern raised by a constituent—a former police officer—who had been pulled over by an officer using a radar device whose technology the officer clearly did not understand. The officer admitted that the only training that he had received on the device was how to turn it on and off. The proposed legislation was intended to ensure that law enforcement officers in all jurisdictions would receive training in the speed measuring devices that they used on the road. *See* Audio Recording, Senate Committee on General Government and Transportation, SB 153, Mar 27, 2001, at 0:51:35 (statements of Kevin Campbell, Oregon Association of Chiefs of Police and Sen Bill Fisher), http://records.sos.state.or.us/ORSOSWebDrawer/Record/4159457 (accessed Mar 9, 2022); *see also* Audio Recording, House Committee on Judiciary, SB 153A, May 22, 2001, at 0:19:23 (statement of Sen Bill Fisher), http://records.sos.state.or.us/ORSOSWebDrawer/Record/4098881 (accessed Mar 9, 2022). The senate committee also discussed how such training was necessary to help ensure that citations are upheld in court and to assure the public that citations are based on accurate measurements. Audio Recording, Senate Committee on General Government and Transportation, SB 153, Mar 27, 2001, at 1:06:40 (statement of Sen Bill Fisher), http://records.sos.state.or.us/ORSOSWebDrawer/Record/4159457 (accessed Mar 9, 2022).

Senator Fisher further explained that the -1 amendments had been developed in recognition of the limited financial resources, especially in rural districts like his own, to "do a lot of fancy training," and that "it was not our intent to cause any real financial burden to any agency." *Id.* at 1:12:57. He noted in particular the expense and difficulty associated with officers having to attend training outside their jurisdictions and commented that local law enforcement agencies would instead be able to do the

training in house or in cooperation with other agencies. *Id.* at 1:02:42; *see also* Audio Recording, House Committee on Judiciary, SB 153A, May 22, 2001, at 0:20:50 (statement of Sen Bill Fisher, in reference to the -1 amendments, that "we made it as easy as we could"), http://records.sos.state. or.us/ORSOSWebDrawer/Record/4098881 (accessed Mar 9, 2022).

Curt Curtis of the Oregon State Police explained that the bill was meant to apply not only to radar devices, but also to various other speed measuring devices, including lidar, aircraft surveillance cameras, and pacing technology. Audio Recording, Senate Committee on General Government and Transportation, SB 153, Mar 27, 2001, at 1:08:15 (statement of Curt Curtis, Oregon State Police), http://records.sos.state. or.us/ORSOSWebDrawer/Record/4159457 (accessed Mar 9, 2022). He further explained that the approval of training programs had been purposely left up to individual law enforcement agencies, partly in recognition that technology changes quickly and because the bill's sponsors wanted officers to be able to try out new equipment without waiting for OSP to develop new training criteria. *Id.* There was no suggestion in the committee hearings that there was or might be significant operational differences between various makes and models of a single type of speed measuring device; rather, the thrust of the testimony was more general—that it was important for officers to be trained in the equipment they were using to enforce the speed laws and that the training be accomplished in a cost-effective, practical manner.

Given that history, we conclude that the legislature's most likely intended meaning is that an officer be trained in the use of the *type* of speed measuring device—be it radar, lidar, or something else—that the officer used in issuing a citation, and not necessarily the specific make or model of that device. In other words—returning to the parties' grammatical disagreement—we agree with the state that "*the* speed measuring device" referenced in the second part of ORS 810.420(2) means the type of device used by the officer, not the particular make or model. To conclude that ORS 810.420(2) requires officers to take a new training course for

every make and model of a speed measuring device that they might encounter would undermine the legislature's express goals of minimizing the financial impact of the requirement and making it simple for law enforcement agencies to comply with. We therefore reject defendant's argument that the court should have dismissed the indictment because there was no evidence that Marl was trained specifically in the use of the Decatur Genesis model radar device.

We turn to defendant's argument that the court erred in denying his motion to dismiss the citation because there is also no evidence in the record that the officer "passed" the training course, as required by the statute. Again, we disagree.

ORS 810.420(2) requires that the officer issuing the citation have "taken and passed a training course" approved by the employing agency. The term "passed" is not defined in the statute; we therefore assume that the legislature intended the plain meaning of the word to apply. *Dowell v. Oregon Mutual Ins. Co.*, 268 Or App 672, 676, 343 P3d 283, *rev den*, 357 Or 324 (2015) ("When a term is defined by a statute, we look to the statutory definition, but when a term is not statutorily defined, we look to dictionary definitions to ascertain the plain meaning of the term."). Given the context in which it is used here, the most relevant dictionary definition of the transitive verb "pass" is "to go through successfully or satisfactorily : attain the required standard in : satisfy the requirements of <~ *ed* the bar examination> <had ~*ed* a security check * * * >." *Webster's Third New Int'l Dictionary* 1650 (unabridged ed 2002).

In this case, Marl testified that, after the police academy, he "went through a second radar-specific course in 2001," which included training in radar and lidar technologies. That is sufficient to establish that Marl had "taken" a training course in the use of radar; defendant does not argue otherwise. The record also establishes that, at the time he cited defendant, Marl was working for the Milwaukie Police Department as a patrol and traffic supervisor and was on duty using a radar device to enforce motor vehicle laws. From that evidence, the municipal court could reasonably infer that Marl had also "passed" the training course—that

is, that he had "go[ne] through [it] successfully or satisfactorily." As discussed above, the legislature intended the training requirement to be practical and cost effective; it did not require the officer to attend a definite program, complete a minimum number of hours, or satisfy any specific proficiency standard. In those circumstances, evidence that Marl "went through" a training program regarding the use of radar and later used a radar device while on duty as a police officer—specifically, as "a patrol supervisor and the traffic supervisor"—is sufficient to support the inference that Marl had successfully completed or "passed" the required course.

Affirmed.